The **VISION CENTER**, Plaintiff-Appellee, Cross Appellant,

v.

**OPTICKS, INC., Will Ross, Inc. and G. D. Searle & Co.**, Defendants-Appellants, Cross Appellees.

No. 78–2867.

United States Court of Appeals, Fifth Circuit.

May 23, 1979.

Rehearing Denied Aug. 1, 1979.

Jones, Walker, Weachter, Poitevent, Carrere & Denegre, Harry S. Hardin, III, Ewell E. Eagan, Jr., New Orleans, La., for defendants-appellants, cross appellees.

Deutsch, Kerrigan & Stiles, William W. Messersmith, III, Lloyd N. Shields, New Orleans, La., for plaintiff-appellee, cross appellant.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an expedited appeal from an order of the district court granting a preliminary injunction which prevents Opticks, Inc.,[1] a Texas corporation, from using the trade name "Pearle Vision Center" in the New Orleans market area. The Vision Center,[2] a Louisiana partnership, claimed that Opticks' proposed use of the words "vision" and "center" constituted trade name infringement and unfair competition. The action was originally filed in state court and was removed to federal court on the basis of diversity jurisdiction. The district court[3] found that the name "vision center" was either suggestive of the partnership's services or, if descriptive, had acquired a secondary meaning. Moreover, the court concluded that Opticks' conduct was tantamount to fraud. Opticks insists that these findings are clearly erroneous and argues that the district court erred in granting a preliminary injunction affording trade name protection to the phrase "vision center." We agree and therefore reverse the district court.

I.

The phrase "vision center" was first used in the New Orleans area in 1955 when Dr. Ellis Pailet, a New Orleans optometrist, adopted it as the name of his sole proprietorship. Subsequently, Dr. Pailet hired additional optometrists and in 1967 formed a partnership which continued, without interruption, to use "The Vision Center" name. That partnership is the plaintiff in this action. The partnership has six locations in the New Orleans area, all operating under the name "The Vision Center."

Dr. Pailet first registered the trade name with the Secretary of State of Louisiana under the Louisiana Trademark Law on April 19, 1955.[4] That registration was renewed in March 1965 and again in February 1975. Over the years, the partnership engaged in the limited advertising permitted under the ethics of the optometric profession and, with a change in the law in 1978, began media advertising in newspapers, magazines, and on the radio.

In 1969, Opticks acquired a New York Company which had dispensed optical goods and services since 1952 under the name "Vision Center." Opticks then began to operate similar stores using this name and, at present, operates a national chain of retail outlets for optical services and goods under the trade names "Vision Center," "Pearle Vision Center," "Rogers Vision Center," and "Hillman-Kohan Vision Center." On July 28, 1970, Will Ross, Inc. registered the words "vision center" as both a service mark and a trademark on the principal register of the U. S. Patent Office. Will Ross later assigned its rights in these marks to Opticks.

1.  Both Opticks, Inc. and Will Ross, Inc. are subsidiaries of G. D. Searle & Co., a Delaware corporation with its principal place of business in Skokie, Illinois. Although all three corporate entities are appellants in this action, we will refer to them collectively as "Opticks."

2.  Because this appeal involves a construction of the words "vision center," we will, in an effort to forestall possible confusion, avoid calling plaintiff "The Vision Center" but will refer to it as the "partnership."

3.  The court's decision granting plaintiff's motion for a preliminary injunction is reported at 461 F.Supp. 835.

4.  La.R.S. 51:211 et seq. At present, no one else in the New Orleans market area uses the combination of words "vision" and "center." On three separate occasions the partnership persuaded other optical firms planning to use these words to change their trade names to some other name. No legal action was necessary on any of these occasions.

During 1977 Opticks formulated a plan to open three outlets in the New Orleans area under the name "Pearle Vision Center."[5] Opticks planned to identify its stores by a large green exterior sign showing the words "Pearle Vision Center" in large white letters, with "Pearle" being the largest word. In promoting its new stores, Opticks also planned to use its national advertising program and materials, including television and radio commercials, newspaper advertisements, and direct mail flyers. Although a percentage of Opticks' consumer-oriented advertising materials used in other parts of the country employs the words "Vision Center," without an identifying prefix, the advertising slated for use in New Orleans always used the words "Pearle Vision Center."[6] The partnership brought suit, and on August 25, 1978, the district court entered a preliminary injunction enjoining Opticks from using any combination of the words "vision" and "center" in the New Orleans area.

## II.

■ The granting or denying of a preliminary injunction rests in the sound discretion of the district court, and its decision will be overturned only for abuse. *Johnson v. Radford,* 449 F.2d 115 (5th Cir. 1971). A preliminary injunction is an extraordinary remedy, however, and the boundaries within which the district court must exercise its discretion are clearly marked. *State of Texas v. Seatrain International, S.A.,* 518 F.2d 175 (5th Cir. 1975); *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974). The district court should issue the injunction only if the moving party clearly satisfies what we have recognized as the four prerequisites to such relief.[7] These are: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Seatrain, supra,* 518 F.2d at 179, and cases cited therein. The remedy should not be granted unless the movant carries the burden of persuasion concerning all four of these criteria.

Because removal to federal court was premised entirely upon diversity of citizenship, we look to state substantive law in assessing the merits of both the trade name infringement and unfair competition claims. The fact that Opticks' Lanham Act registration may be a defense to a state trade name infringement claim affords no basis for original federal question jurisdiction.[8] *Gully v. First Nat'l Bank,* 299 U.S. 109, 57

---

5. Opticks was aware of the existence of "The Vision Center" and, at one point, initiated negotiations to purchase the partnership. The partners considered Opticks' offer but declined to sell.

6. The district court found that Opticks had used the words "Vision Center" on certain of its eyeglass cases and had exhibited no intention to abandon such use. The record indicates, however, that the partnership obtained the eyeglass case introduced as an exhibit from Opticks' Biloxi, Mississippi store, and the partnership offered no proof that any materials without the identifying prefix "Pearle" would be used in New Orleans. Absent evidence to the contrary, the district court should have accepted Opticks' assertion that all of its New Orleans advertising will employ the words "Pearle Vision Center" and that it will not use the words "Vision Center" without the identifying prefix.

7. The partnership contends that the standard for appellate review of the granting of a preliminary injunction recognized in our opinions is inapplicable in a trade name case. We disagree. In *Compact Van Equipment Co. v. Leggett & Platt, Inc.,* 566 F.2d 952 (5th Cir. 1978), a patent infringement and unfair competition case, we examined the district court's granting of a preliminary injunction in the light of these four prerequisites. A trade name infringement case does not require a different standard. *See, e. g., Scientific Applications, Inc. v. Energy Conservation Corp.,* 436 F.Supp. 354 (N.D.Ga. 1977).

8. It is clear that Opticks' federal registration is not a defense in this case since, as the district court found, the partnership was a prior user of the term "Vision Center" in the New Orleans market area. *See Burger King v. Hoots,* 403 F.2d 904 (7th Cir. 1968).

S.Ct. 96, 81 L.Ed. 70 (1936); *La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3rd Cir. 1974). Although we apply Louisiana law, we note that both parties have relied on federal precedents as announcing generally accepted principles of substantive trademark law. Except where we discern a difference between local law and the general law on the subject, we will also employ relevant federal decisions. *See Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 113 n. 1, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

## III.

The threshold question in any trade name infringement action is whether the word or phrase was initially registerable or protectable.[9] *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974). To assist in making this determination, the courts have traditionally divided the universe of potential trade names into various categories of legal protectability. A trade name is generally classified as being either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.[10] *Miller Brewing Co. v. G. Heilman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *American Heritage, supra*, 494 F.2d at 11. Although these categories are meant to be mutually exclusive, they are spectrum-like and tend to merge imperceptibly from one to another. For this reason, they are difficult to define and, quite frequently, difficult to apply. *Miller Brewing Co. v. G. Heilman Brewing Co., supra*, 561 F.2d at 79.

A generic term is the name of a particular genus or class of which an individual article or service is but a member. Most courts hold that a generic term is incapable of achieving trade name protection. A descriptive term[11] identifies a characteristic or quality of an article or service and, though ordinarily not protectable, may become a valid trade name if it acquires a secondary meaning. A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as de-

9. Louisiana law defines a trade name to be "a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation, or occupation of others." La.R.S. 51:211. The mere registration of a trade name does not grant the registrant any substantive rights but confers only procedural advantages. *Buyers & Traders Service, Inc. v. Car Maintenance Specialists*, 290 So.2d 753 (La.App.1974); *Gallo v. Safeway Brake Shops*, 140 So.2d 912 (La.App.1962). Although the Secretary of State's decision regarding the registerability or protectability of a particular mark is persuasive, his determination is not conclusive or binding on this court. *Couhig's Pestaway Co. v. Pestaway, Inc.*, 278 So.2d 519 (La.App.1973). The Louisiana trademark statute specifically authorizes the courts to order cancellation of a registered mark when they deem that registration to have been improvidently granted. La.R.S. 51:219.

10. Although no Louisiana case has employed this precise classification scheme, both the district court below and the parties here utilized it in analyzing this case. For this reason, and because we do not think the Louisiana courts would question the usefulness of the categories or reject the parties' reliance on them, we adopt the classification scheme as an aid in measuring the legal protectability of the "vision center" name.

11. Some courts see little difference between the generic and the descriptive categories and tend to meld the two concepts into one. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co., supra*, 494 F.2d at 11; *but see Aloe Creme Laboratories, Inc. v. Milsan*, 423 F.2d 845, 849 (5th Cir.), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970). As one commentator has noted, the distinction between descriptive and generic terms is necessarily one of degree. R. Callman, *The Law of Unfair Competition, supra*, § 70.4. The practical significance of the distinction is seen in the courts' refusal to allow proof of secondary meaning to elevate generic, as opposed to descriptive, terms to trademark status. As noted below, however, under Louisiana law a plaintiff depending on the secondary meaning of his mark must prove fraud or unfair competition before the court will enjoin the defendant's use. This unorthodox construction results in the practical elimination of the generic/descriptive dichotomy, since neither the owner of the generic mark nor the owner of the descriptive mark may rely solely on secondary meaning to achieve trade name protection.

scriptive. *General Shoe Corp. v. Rosen*, 111 F.2d 95, 98 (4th Cir. 1940). A suggestive term requires no proof of secondary meaning in order to receive trade name protection. An arbitrary or fanciful term bears no relationship to the product or service and is also protectable without proof of secondary meaning.

■ The partnership urges, and the district court found, that "The Vision Center" name is suggestive and therefore entitled to full trade name protection without proof of secondary meaning. We are convinced, however, that the trade name "Vision Center" is descriptive [12] of a clinic providing optical goods and services, and we hold that the partnership has failed to prove secondary meaning as required under Louisiana law. For these reasons, we reverse.

We begin with the proposition that "[t]he concept of descriptiveness must be construed rather broadly" 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies*, § 70.2 (3d ed. 1969). Whenever a word or phrase naturally directs attention to the qualities, characteristics, effect, or purpose of the product or service, it is descriptive and cannot be claimed as an exclusive trade name. *Id.* at § 71.1. Webster's Third New International Dictionary (1964) [13] defines the word "vision" as

the act or power of seeing; visual sensation or the capacity for it.

The word "center" means

a concentration of requisite facilities for an activity, pursuit, or interest along with various adjunct conveniences [e. g. shopping center, medical center, amusement center].

Used in combination, the words imply a place where there is a concentration of requisite facilities relating to the power of seeing or the capacity for it. Because the name does not require "imagination, thought and perception to reach a conclusion as to the nature of the goods" or services, it cannot be considered a suggestive term. *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968).

Another test used by the courts to distinguish between descriptive and suggestive marks is "whether competitors would be likely to need the terms used in the trademark in describing their products." *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976). We agree with Opticks that the word "vision" is virtually indispensable to the vocabulary of the optical goods industry.[14] This word, along with such common nouns as eye, sight, and optics, naturally occurs to one in thinking of the goods and services provided by the parties. Similarly, the word "center" is a common term found useful by a variety of commercial enterprises.

We are, of course, aware that common, ordinary words can be combined in a novel or unique way and thereby achieve a degree of protection denied to the words when used separately. Although examining a trade name's individual words in isolation entails the risk that the distinctiveness of the words in combination will be overlooked, we are not guilty of such an oversight here. Rather, whether the words "vi-

---

**12.** We are unable to agree with Opticks that the phrase "vision center" is a generic term. Although the phrase is descriptive of a business that deals in optical goods, we do not think that it has become a common, recognized name of such establishments. In connection with this litigation, Opticks has offered to have its federal registrations cancelled if we will find that these words are generic. While this court is neither disposed nor authorized to bargain with legal rights, we note that in reality Opticks has provided us with no quid pro quo in this case. Under the Lanham Act, if a registered mark becomes the "common descriptive name" of an item (i. e., becomes generic) it may be cancelled at any time. 15 U.S.C. § 1064. Therefore, if we were to find that the phrase is generic we would not need Opticks' permission to cancel its mark.

**13.** "The dictionary definition of the word is an appropriate and relevant indication 'of the ordinary significance and meaning of words' to the public." *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, supra, 494 F.2d at 11.

**14.** We note that the word has been utilized in the trade name of another optical store in New Orleans, the Vision Plaza.

sion" and "center" are examined together or separately, we are convinced that they lack the quality of inventiveness and imaginativeness characteristic of suggestive trade names.

■ Yet another barometer of the descriptiveness vel non of a particular name is the extent to which it has been used in the trade names of others offering a similar service or product. *Shoe Corp. of America v. Juvenile Shoe Corp.,* 266 F.2d 793, 796 (C.C.P.A.1959). As the record reveals, the name "vision center" has been adopted by a large number of optical stores in other parts of the nation.[15] That the partnership is the only one to use the term in New Orleans does not preclude us from finding that its name is descriptive.

A number of federal and state cases construing similar trade names are consistent with our decision. In *Car Care, Inc. v. D. H. Holmes Co.,* 160 So.2d 272 (La.App.1964), a Louisiana case, plaintiff sought to enjoin the defendant's use of the name "D. H. Holmes Car Care Center" as an infringement of its name, "Car Care Center." The court concluded that the words "car care" were descriptive of the automobile maintenance business and therefore incapable of exclusive appropriation. In *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 196 U.S.P.Q. 121 (D.Or.1976), plaintiff claimed that the defendant's use of the name "Medical Dental Surgicenter" infringed its federally registered mark, "Surgicenter." The court disagreed and held that "Surgicenter" was a generic term which

should not be given trade name protection. *See also In re Executone Inc.,* 191 U.S.P.Q. 57 (C.C.P.A.1976) ("Nerve Center"); *Johnson & Johnson v. Saxton Adhesive Products, Inc.,* 185 U.S.P.Q. 245 (C.C.P.A.1974) ("Tape Center"); *Allens Drug Co. v. Henry B. Gilpen Co.,* 180 U.S.P.Q. 327 (C.C.P.A. 1973) (Drug Center"); *Houston v. Berde,* 211 Minn. 528, 2 N.W.2d 9 (1942) ("Food Center").

The partnership questions the applicability of these cases and attempts to distinguish them on the ground that, unlike here, their identifying words describe the goods or services provided by their respective establishments. In order to more precisely identify the service provided by an optical store, the partnership's name should read "Vision *Care* Center."[16] While this may be regarded as the *full* name of such an establishment, to pretend that the abbreviated name "Vision Center" cannot substitute in its stead ignores our "universal habit of shortening full names—from haste or laziness or just economy of words." Application of *Abcor Development Corp.,* 588 F.2d 811 (C.C.P.A.1978) (Rich, J., concurring). It simply does not require an effort of the imagination to decide that a "vision center" is a place where one can get glasses. Consequently, we find either name to be descriptive of the service provided by a business that deals in optical goods.[17]

## IV.

The case law uniformly requires that we refuse trade name protection to a descrip-

**15.** *E. g.,* Royal Vision Center, Chicago Vision Center, Vision Center and Optical Clinic of Baton Rouge, Vision Center Opticians, Professional Vision Center, Vision Center of South Boston, Vision Center at Harvard Square, Plymouth Vision Center, Konrad Vision Center, Total Vision Center, Belmont Vision Center, Livonia-Mall Vision Center, V.I.P. Vision Center, American Vision Center, United Vision Center, 20/20 Vision Center, Plain Vision Center and Harvey Rubin Vision Center.

**16.** The descriptive nature of this term is, of course, beyond peradventure.

**17.** As evidence that its chosen trade name is distinctive and not generic or descriptive, the partnership points out that a patient in need of

eye care is unlikely to say or think, "I am going to my vision center." This reasoning is unacceptable. Few consumers would call a grocery store a "food center" or a pharmacy a "drug center," yet these names have been held descriptive of the establishment's identity. Thus, the fact that "vision center" is not the only or most common name for an optical goods store is not determinative, for "there is no legal foundation that a product has only one common descriptive name." *Roselux Chemical Co. v. Parsons Ammonia Co.,* 299 F.2d 855 (C.C.P.A. 1962). Also, "the absence of a word or expression from dictionaries is not controlling on the question of registerability." *In re Cooper,* 196 U.S.P.Q. 182 (1977).

tive term unless it has acquired a secondary meaning.[18] In order to establish secondary meaning the plaintiff "must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). The burden of proof rests at all times with the plaintiff, and "[a] high degree of proof is necessary to establish secondary meaning for a descriptive term." R. Callman, *The Law of Unfair Competition, supra,* § 77.3 at 359; *American Heritage, supra,* 494 F.2d at 12.

Most courts hold that once the plaintiff establishes secondary meaning he need only show a likelihood of confusion in order to enjoin an infringing use. *E. g., Aloe Creme Laboratories, Inc. v. Milsan, Inc.,* 423 F.2d 845 (5th Cir. 1970); R. Callman, *The Law of Unfair Competition, supra,* § 77.1. The Louisiana courts, however, continue to hold that the plaintiff who depends on secondary meaning for his trade name cannot obtain injunctive relief unless he proves fraud or unfair competition on the part of the defendant. *Home Beverage Service v. Baas,* 210 La. 873, 28 So.2d 481, 484 (1946); *Straus Frank Co. v. Brown,* 246 La. 999, 169 So.2d 77 (1964); *Couhig's Pestaway Co. v. Pestaway, Inc.,* 278 So.2d 519 (La.App.1973). Under this rule, the law of unfair competition effectively swallows up the secondary meaning doctrine. Although *Callman* expressly disapproves of the Louisiana case law and considers it erroneous, we are not at liberty to do so.[19]

The partnership, however, relies on the district court's finding that Opticks' conduct amounted to or was at least tantamount to fraud. The Louisiana courts have "always been reluctant to presume fraud." *Straus Frank Co. v. Brown, supra,* 169 So.2d at 80. In the *Straus Frank* case the plaintiff, operating under the trade name "Lake Auto Parts," sued to enjoin the defendant from using the name "Lake Auto Supply." The court observed:

One other charge leveled at defendant is that he knew of plaintiff's trade name and by adopting a similar one it may be inferred his motive was fraudulent. But we are not convinced of this. To the contrary, aside from the words "Auto Supply" which describes his business, we feel defendant was motivated by the geographical location in the selection of the name Lake Auto Supply, situated as the business is in the town of Lake Arthur which lies on the shores of Lake Arthur.

169 So.2d at 81. Having used the "vision center" trade name for many years in connection with its network of similar stores and its national advertising campaign, Opticks has a significant investment in the name. It was predictable that Opticks would choose to use the name "Pearle Vision Center" in New Orleans. The emphasis placed on the word "Pearle"[20] further absolves Opticks from any charge of deception or unfair competition, and under Louisiana law the addition of this identifying prefix is legally sufficient to distinguish Opticks' business from the partnership's.[21]

**18.** "The terms, primary and secondary, may be somewhat misleading since a secondary meaning entitled to protection must have become the primary meaning to the consumer." *Aloe Creme Laboratories, Inc. v. Milsan, Inc., supra,* 423 F.2d at 848 n. 9.

**19.** R. Callman, *The Law of Unfair Competition, supra,* § 77.1. The Louisiana courts are not unaware of the controversy surrounding the requirement that the plaintiff who relies on secondary meaning prove fraud. *See Straus Frank Co. v. Brown,* 246 La. 999, 109 So.2d 77 (1964).

**20.** Although we hold that Opticks is free to use the words "vision center" in New Orleans, the corporation is obligated "to identify its product lest it be mistaken for that of the plaintiff." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. at 120, 59 S.Ct. at 114. Opticks, therefore, must honor its pledge to place the identifying prefix "Pearle" in front of the phrase "Vision Center" on all its signs and advertisements in the New Orleans area.

**21.** The prefix is not only legally sufficient but is legally necessary in order to distinguish Opticks' business and prevent unfair competition. For this reason, Opticks should desist from listing its establishment in the telephone directory under the heading "Vision Center Pearle— See Pearle Vision Center." *See Home Bever-*

*Home Beverage Service v. Baas, supra; Couhig's Pestaway Co. v. Pestaway, Inc.,* 278 So.2d 519 (La.App.1973). We are convinced that the district court's finding of fraud was incorrect.

■ As the above discussion indicates, even if we were to concede that the partnership's name had acquired a secondary meaning we could not prevent the fair use of the descriptive term "vision center." *Home Beverage Service v. Baas, supra.* We are convinced, however, that the partnership failed to shoulder the substantial evidentiary burden necessary to establish the secondary meaning of this descriptive name.

In assessing a claim of secondary meaning,

> the chief inquiry is the attitude of the consumer toward the mark; does it denote to him a, "single thing coming from a single source"? Short of a survey, this is difficult of direct proof.

*Aloe Creme Laboratories, Inc. v. Milsan, Inc., supra,* 423 F.2d at 849. The partnership presented no evidence involving an objective survey of the public's perception of its name. Instead, the only evidence offered to show secondary meaning was the testimony of seven of the partnership's customers that "Vision Center" meant the partnership's business to them, testimony that the partnership had occasionally received mail addressed to other establishments that had "vision" in their name, and evidence that a customer of one of Opticks' stores in another city believed the partnership and Opticks were associated.

We think this evidence falls short of establishing that in the minds of the consuming public the *primary* significance of the term "vision center" is "not the product but the producer." Additionally, the recogni-

tion of the partnership's long use of the term does not require a different result since the "courts have summarily rejected claims of secondary meaning predicated solely upon the continued use of the mark for many years." [22] R. Callman, *The Law of Unfair Competition, supra* § 77.3.

### V.

■ We now address, perhaps somewhat belatedly, the partnership's assertion that Opticks' federal registration of the words "vision center" is prima facie evidence that the name is distinctive and not generic or descriptive. The partnership finds itself in the unusual posture of asserting the validity of Opticks' federal registration, while Opticks, instead of seeking to defend its mark, challenges its initial registerability or protectability. Assuming arguendo that the prima facie evidence provision of the Lanham Act was designed to benefit the partnership in this case, we nevertheless adhere to our conclusion that the "vision center" name is merely descriptive.

Although a statutory presumption of validity is accorded to marks registered under the Lanham Act, 15 U.S.C. §§ 1057(b), 1115(a), this presumption is rebuttable and may be overcome by establishing the generic or descriptive nature of the mark. *Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774, 779 (2d Cir. 1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). The partnership maintains that Opticks failed to show that the name is descriptive. We disagree. Our previous discussion indicates that in this case Opticks has argued persuasively, not merely with equal force, that the partnership's name is a term descriptive of the products and services provided by an optical store. *Aluminum Fabricating Co. v. Season-All Window Corp.,*

---

*age Service v. Baas, supra,* 28 So.2d at 486, where the court, in finding no likelihood of confusion between plaintiff's Home Beverage Service name and defendant's Victory Home Beverage Service name, noted that the defendant listed its name only under the letter "V" in the telephone directory and not under the letter "H."

**22.** The partnership has used the "Vision Center" name in New Orleans for over 20 years. During most of this period, however, it was precluded by the ethics of the profession from engaging in media advertising. Although extensive advertising would not have assured the partnership's success, this circumstance *no* doubt significantly affected its efforts to develop a secondary meaning for its name.

259 F.2d 314, 316 (2d Cir. 1958); *Scientific Applications, Inc. v. Energy Conservation Corp.,* 436 F.Supp. 354, 360 (N.D.Ga.1977). The weight of these arguments is more than sufficient to rebut the prima facie presumption that the name is suggestive rather than merely descriptive.

## VI.

Because the partnership has not shown a substantial likelihood that it would ultimately prevail on the merits, it is not entitled to the extraordinary relief of a preliminary injunction. We find it unnecessary to engage in a discussion of the other three criteria, except to note that the partnership has also not shown that the injury it will suffer by denying the injunction outweighs the damage that Opticks will suffer if the injunction is granted.

We reverse the district court and remand with instructions that the court dissolve the preliminary injunction and issue an order requiring Opticks to place the identifying prefix "Pearle" before the phrase "Vision Center" on all its signs and advertisements in the New Orleans area.

REVERSED and REMANDED.