**DISCOUNT MUFFLER SHOP, INC., Plaintiff,**

v.

**MEINEKE REALTY CORPORATION, INC. et al., Defendants.**

**No. C 80–621.**

United States District Court, N. D. Ohio, W. D.

Feb. 19, 1982.

Harland M. Britz, Toledo, Ohio, for plaintiff.

Hugh L. Fisher, Toledo, Ohio, for defendants.

MEMORANDUM AND ORDER

WALINSKI, District Judge.

This cause came to be heard on the plaintiff's motion for preliminary injunction. The plaintiff, Discount Muffler Shop, Inc. (Discount Muffler) filed this action and asserts that the defendants have infringed plaintiff's common law trademark rights and alleges acts of unfair competition. Defendants, including Meineke Discount Muffler Shops, Inc. (Meineke Discount Muffler), have counterclaimed for infringement of their federal service mark Registration No. 1,042,467, issued June 29, 1976 under the Trademark Act of 1946, 15 U.S.C. § 1501 *et seq.* The plaintiff seeks a preliminary and permanent injunction against all defendants for trademark infringement and unfair competition. Also before the Court is the defendants' motion to dismiss and the plaintiff's opposition thereto.

This cause was originally filed in the Court of Common Pleas of Lucas County, Ohio and was properly removed to this Court by the defendants pursuant to 28 U.S.C. § 1441. This Court has jurisdiction over the parties and over the subject matter in issue in both the complaint and counterclaim.

An evidentiary hearing in which the parties appeared and presented witnesses was conducted. The parties have filed written arguments and the cause is before the Court for decision. Having been fully advised, therefore, the Court makes the following Findings of Fact and Conclusions of Law based on the evidence adduced at trial and on the arguments of counsel:

## I. FINDINGS OF FACT

1. Plaintiff, Discount Muffler is an Ohio corporation having a principal place of business at 2113 Laskey Road, Toledo, Ohio.

2. Defendant, Meineke Realty Corporation, Inc., is a Delaware corporation, having a principal place of business at 12013 Wilcrest, Houston, Texas.

3. Defendant, Meineke Discount Muffler is a Texas corporation having a principal place of business at 12013 Wilcrest, Houston, Texas. Meineke Discount Muffler is engaged nationwide in the franchising and operation of muffler repair shops.

4. Defendant, Henry Gaylord is a resident of Napoleon, Ohio who has been franchised by Meineke Muffler to operate the muffler shop on Laskey Road in Toledo, Ohio. Defendants' Exhibit R.

5. Plaintiff's President, John P. Decker, started the plaintiff's business with a single muffler shop in 1970. The plaintiff now has six muffler shops in Toledo, including one at 2113 Laskey Road. Plaintiff's Exhibit 17. Each of plaintiff's shops has been known from its inception to date as "Discount Muffler".

6. On April 4, 1973 John P. Decker registered in Ohio the name Discount Muffler Shop as an assumed name for the business of repairing and replacing exhaust systems. Plaintiff's Exhibit 3.

7. John P. Decker, doing business as Discount Muffler Shop, was issued a State of Ohio Department of Taxation Vendor's License on July 17, 1972. Plaintiff's Exhibit 1.

8. The plaintiff incorporated in Ohio on August 20, 1973. Plaintiff's Exhibit 6. John P. Decker was one of the incorporators of the plaintiff corporation. Plaintiff's Exhibit 7.

9. John P. Decker, doing business as Discount Muffler Shop, transferred certain assets to the plaintiff on October 1, 1973 by a Bill of Sale. Plaintiff's Exhibit 8. The Bill of Sale does not specifically cite good will as an item transferred.

10. The plaintiff received a State of Ohio Department of Taxation Vendor's License on October 4, 1973. Plaintiff's Exhibits 9 and 10.

11. John P. Decker renewed the registration of the assumed name, Discount Muffler Shop, on March 28, 1978. Plaintiff's Exhibit 5. John P. Decker testified that he did not know whether he received any money from the plaintiff for the use of the assumed name.

12. On March 14, 1981, John P. Decker assigned the assumed name registration to the plaintiff. Plaintiff's Exhibit 11.

13. Defendant, Meineke Discount Muffler, was established in the early part of 1971. Defendants' Exhibit H.

14. Defendant, Meineke Discount Muffler, owns a U.S. Service Mark Registration No. 1,042,467 on which is the representation of a muffler with the name "Meineke" imposed thereon, with a smiling face to the left of Meineke as shown on the defendant's signs (Plaintiff's Exhibits M through Q) and below the muffler, the words "Discount Muffler", appear. This mark was registered June 29, 1976. This registration states a "first use" of July 20, 1972. There is no disclaimer of "discount" or "muffler" in this registration.

15. The defendant, Meineke Discount Muffler, entered into a franchise license agreement dated July 12, 1979, with Henry Gaylord (Defendants' Exhibit R) and conducted a site analysis of the 1705 Laskey Road site.

16. The "Site Analysis Report" dated May 8, 1980 (Defendants' Exhibit T) describes Laskey Road as a "major East/West artery" with a traffic load count of 18,800/21,650 cars per day. The analysis includes a map showing the proposed location of Gaylord's shop at 1705 W. Laskey Road and of the plaintiff's existing shop at 2113 Laskey Road. The plaintiff's existing shop is further noted, under the heading of "Location of Competitors," as "Discount—2 blocks west." Defendants' Exhibit T at VI.

17. Defendant Gaylord's shop opened for business about September 5, 1980.

18. The plaintiff's advertising consists primarily of large advertisements in the yellow pages of the Ohio Bell Telephone Book for Toledo and Vicinity each year since 1970. Plaintiff's Exhibit 13. The plaintiff's current (1980–81) yellow page advertisement is a half-page size on page 454.

19. The plaintiff has also advertised in "TV Facts" (Plaintiff's Exhibit 17); the November 11, 1980, United American Veteran News, using the words "Discount Muffler Shops" superimposed on a muffler (Plaintiff's Exhibit 14); a one time advertisement in the Fraternal Order of Ohio Veterans Salute (Plaintiff's Exhibit 15); an advertisement in the Toledo Union Journal on November 7, 1980 (Plaintiff's Exhibit 16) showing the words "Discount Muffler Shops"; and at one time a full-size billboard advertisement within the city limits of Toledo. Plaintiff's Exhibit 19.

20. Defendant, Meineke Discount Muffler, advertises in the yellow pages of the Ohio Bell Telephone Book. Their half-page advertisement appears on page 455 directly opposite the plaintiff's half-page advertisement. Plaintiff's Exhibit 18. The defendant has also advertised in The Blade. Plaintiff's Exhibit 33. The Blade newspaper is the only daily paper of wide distribution in this marketing area and is the sole outlet for wide distribution newspaper advertising.

21. Defendant, Meineke Discount Muffler has advertised nationally from as early as September 14, 1972 in the Wall Street Journal. (Defendants' Exhibits A, B, D, E, F, G, J and K) and other major city newspapers (Defendants' Exhibits F, I and K) and used the name Meineke Discount Mufflers, Inc. and Meineke Discount Mufflers.

22. The purchasing public, those owners or operators whose automobiles may need a muffler or other exhaust system repair or replacement, is the relevant object of the plaintiff's and the defendants' advertisements. That defendant, Meineke Discount Mufflers, advertises heavily in business publications such as the Wall Street Journal to attract investors as new franchisees has no relevance as to the question of likelihood of confusion by that part of the public which is the prospective customer for an exhaust system.

23. The plaintiff's President, John P. Decker, testified that the basis for representing itself as Discount Muffler was that the plaintiff's prices were less than the prices of Midas, a major competitor.

24. The defendant, Meineke Discount Mufflers, has shown in its authorized adver-

tising the amount of its discount. Defendant's Exhibit C.

25. The defendant, Meineke Discount Mufflers, provides its franchisees with a price schedule with suggested list price, net price and an economy price, which prices are available to the public. Defendants' Exhibit S.

26. At the time of the institution of this action, each of the plaintiff's six shops featured a large sign bearing the name "Discount Muffler" in black letters on a yellow background. *See, e.g.,* Plaintiff's Exhibits 24 and 25.

27. There is some variation among the plaintiff's six shops in the color schemes of the buildings and the stylizing of the words "Discount Muffler Shop." Plaintiff's Exhibits 20 to 25.

28. Defendant Gaylord's shop at 1705 Laskey Road has an elevated street sign closely adjacent to the road. The word "Meineke" appears in yellow letters on a black muffler with a smiling face. The words "Discount Muffler" appear in black letters on a yellow background. A second sign on the building itself, a converted gas station, facing Laskey Road reads "Meineke Discount Muffler Shop." The letters are black on a yellow background. The words "Discount Muffler" are in larger and bolder letters than the other words. Plaintiff's Exhibit 26.

29. The sign at the defendants' Laskey Road shop is a standard sign and is required to meet certain specifications pursuant to a sign agreement.

30. Defendant Meineke Discount Mufflers' outside free standing signs are all the same. Defendants' Exhibits M to Q.

31. Defendant, Henry Gaylord, testified that the building colors at 1705 Laskey Road derived from the prior occupant, Union 76.

32. The dominant feature of the signs at the plaintiff's and the defendants' Laskey Road locations is the term "Discount Muffler" so that the confusion between the two shops is possible.

33. Defendant, Gaylord, testified that, in his opinion, there is "no confusion between the companies" but that there is actual confusion between the shops, both located on Laskey Road. The Court finds that whatever confusion there is between the shops exists because of the common use of the term "Discount Muffler" on the signs and advertising of both parties.

34. Two high school boys testified on behalf of the plaintiff that they were confused because of the closeness of the defendants' franchise at 1705 Laskey Road to the plaintiff's shop at 2113 Laskey Road. They each had been sent to the plaintiff's shop on Laskey Road with another's automobile for an exhaust system replacement but ended up having the replacement done by the defendants' shop.

35. Defendant, Henry Gaylord, testified that 60% of his shop's business came from the Toledo telephone directory; 25% was by way of drive-in business; and 10% was by way of referral.

36. Defendant Henry Gaylord, testified with respect to the telephone directory and specifically, the yellow pages, (Plaintiff's Exhibit 13), that prospective customers call first Bargain Muffler Shops; second, Discount Muffler Shops; and third, Meineke Discount Muffler Shops; in that order because the three advertisements appear in that order in the yellow pages.

37. John P. Decker testified with respect to Plaintiff's Exhibit 13, and specifically page 456 of the Toledo telephone directory yellow pages, that after the plaintiff's listing, which includes the words "Discount Muffler Shops," "Discount Muffler" and "Discount Muffler Foreign Car Shop," there appear three K-Mart Discount Muffler listings, one for each shop at 5956 W. Central, at 2830 Navarre, and at 6507 East Manhattan.

38. John P. Decker testified that the plaintiff had charged K-Mart with infringement of its assumed name.

39. Defendants submitted evidence showing the word "discount" used with many types of business: discount appliance,

discount auto parts, discount auto sales, discount auto service, discount auto supplies, discount bakery, discount meat, discount merchandise, discount motorcycles, discount motors, discount muffler shops, discount music, discount furniture, discount office supplies, discount sales and discount shoes. Defendants' Exhibit L. The U. S. Patent and Trademark Office has required registrants to disclaim rights in the words "discount," "discount auto center," "discount shopping service," and, with respect to Midas' registrations, to disclaim the words "muffler shops."

40. The plaintiff has filed a petition for cancellation of Registration No. 1,042,467 for the service mark MEINEKE DISCOUNT MUFFLERS. *See*, Supplemental Information of defendant Meineke Realty Corporation, Inc., filed May 4, 1981.

## II. DISCUSSION

### A. PRELIMINARY INJUNCTION

Although variously stated, the guidelines for the exercise of judicial discretion in granting or withholding preliminary injunctive relief consist of four elements:

1) that a substantial question is at issue;

2) that there is a probability of success on the merits;

3) that a balancing of injuries to the parties requires preliminary injunctive relief; and

4) that the public interest would be served by such preliminary relief.

*Securities and Exchange Commission v. Senex Corp.*, 534 F.2d 1240 (6th Cir. 1976). A preliminary injunction should not be granted unless the movant carries the burden of persuasion concerning all four of these criteria.

■ In an action for trade name infringement the threshold question is whether the word or phrase is registrable or protectable. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 202 U.S.P.Q. 333 (5th Cir. 1979); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3 (5th Cir. 1974). Four categories of terms have been defined to assist in determining whether a term or phrase is eligible for trademark protection. These classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Vision Center v. Opticks, Inc., supra*, 596 F.2d 111, 115, 202 U.S.P.Q. 333, 338; *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976).

■ A generic term is one which is commonly used as the name or description of a kind of goods. It is generally accepted that a generic term is incapable of achieving trade name protection. *Miller Brewing Co. v. G. Heileman Brewing Co., supra*, 561 F.2d at 79; *C. E. S. Publishing Corp. v. St. Regis*, 531 F.2d 11 (2d Cir. 1975), and the cases cited therein. A descriptive term specifically describes a characteristic or quality of a product or service. A descriptive term is not ordinarily protectable but can, by acquiring a secondary meaning, become a valid trademark. *Miller Brewing Co. v. G. Heileman Brewing Co., supra*, 561 F.2d at 79; *Abercrombie & Fitch Co. v. Hunting World, Inc., supra*, 537 F.2d at 10. A suggestive term suggests rather than describes a characteristic or quality of a product or service and requires imagination by the observer in order to be understood. An arbitrary or fanciful term bears no relationship to the product or service. A term which is suggestive, arbitrary or fanciful is protectable without proof of secondary meaning.

In the instant case, the defendants contend that the words "discount muffler" are generic and thus are incapable of trade name protection. The plaintiff contends these words are descriptive and have acquired secondary meaning in the Toledo marketing area.

Placing a specific term within one of these categories can be very difficult. The categories are "spectrum-like and tend to merge imperceptibly from one to another. For this reason, they are difficult to define and, quite frequently, difficult to apply." *Miller Brewing Co. v. G. Heileman Brewing Co., supra*, 561 F.2d at 79, 195 U.S.P.Q. at

284–285. *Vision Center v. Opticks, Inc.*, 596 F.2d at 115, 202 U.S.P.Q. at 338. Also, "[t]he distinction between generic and descriptive marks is a matter of degree." *Imported Auto Parts Corp. v. R. B. Shaller & Sons, Inc.*, 202 U.S.P.Q. 235, 238 (Minn. 1977).

It has been recognized that "[t]he dictionary definition of the word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public." *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d at 11. Webster's Third New International Dictionary (1966) defines the word "discount" as:

> an abatement or reduction made from the gross amount or value of anything: as . . . a reduction from a price made to a specific customer or class of customers.

The word "muffler" means:

> any of various devices to deaden the noise of escaping gases or vapors; *specif.* a tube filled with baffles through which the exhaust gases of an internal-combustion engine are passed.

The distinction between generic and descriptive terms was recently analyzed in *Miller Brewing Co. v. Falstaff Brewing Corp.*, 503 F.Supp. 896, 208 U.S.P.Q. 919 (D.R.I.1981), *mod.*, 503 F.Supp. 916, 209 U.S.P.Q. 137 (D.R.I.1981). Rather than applying a strict classification to a name, Chief Judge Pettine's opinion relies on the fundamental policies involved and the interest which the trademark law was developed to protect, the public's recognition of the mark as designating *origin* of product rather than *type* of product. In its analysis the *Miller* Court states:

> If the acid test of a symbol's capacity to differentiate is public perception, then the process of labelling for purposes of protectability cannot be undertaken without reference to that perception. A word or logo should not be "generic" because a judge decides that it looks generic to him or her. Likewise, while the dictionary entry for a word is some evidence of what the public may understand it to mean, dictionary definitions should create at most a rebuttable presumption of what

the consumer's perception is. To label a word or logo "generic" in the face of the admitted presence of secondary meaning is to assert that every word has some absolute, inherently correct characterization that the law will discern without regard to what the public may *think* the word means.

*Id.* 503 F.Supp. at 906, 208 U.S.P.Q. at 931.

In spite of the *Miller* Court's analysis, the developed policy expressed in the case law is to deny trademark protection to a generic term. As stated by the Court of Appeals for the Second Circuit:

> To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are.

*C. E. S. Pub. Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975).

The *Miller* Court granted the plaintiff a preliminary injunction based on the unique factual situation of that case. That decision relied primarily on the dramatic change in the light beer market over a period of a few years:

> When Miller introduced LITE nationwide in 1975, it presented to the public a virtually unknown product. Miller's promotional efforts caused consumer recognition of reduced calorie beer to skyrocket . . . . As the market was flooded with light beers, Miller persisted in designating its product LITE. Thus the public began to *see* LITE against a backdrop of competing labels.

The *Miller* Court concluded that it was open for Miller to prove that LITE was no longer generic since the market for light beer had changed. In the present action, there are no such similar factors at work. In addition, on motion for stay of the preliminary injunction, the *Miller* Court considered two recent decisions: *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 207 U.S.P.Q. 465 (1st Cir. 1980), and *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 634 F.2d 1, 208 U.S.P.Q. 313 (1st Cir. 1981).

The decision in *Keebler* stated:

No amount of purported proof that a generic term has acquired secondary meaning associating it with a particular producer can transform the term into a registrable trademark .... Similarly, at common law terms that are generic are normally not subject to appropriation as trademarks.

*Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d at 374. In *S. S. Kresge*, the First Circuit seemed to foreclose any protection for a generic term used generically. The *Miller* Court stated that:

the Court in S. S. Kresge II seems to have limited the implications of Keebler Co. and warned, in effect, that it is easier for a camel to pass through the eye of a needle than for the users of a "generic" mark to obtain exclusive use protection.

*Miller Brewing Co. v. Falstaff Brewing Corp.*, 503 F.Supp. at 921, 209 U.S.P.Q. at 142.

The *Miller* Court held that it could not confidently conclude that Miller's claim was legal and tenable under the law as expounded in *Keebler* and *S. S. Kresge*. Therefore, the Court suspended any preliminary relief under the preliminary injunction already granted by the Court.

The plaintiff in the instant action also relies on two cases involving the word "budget": *Budget Rent-A-Car Corp. v. Budget Driveurself, Inc.*, 155 U.S.P.Q. 65 (N.D.N.Y.1967), and *Budget System, Inc. v. Budget Loan & Finance Plan*, 12 Utah 2d 18, 361 P.2d 512 (1961). Those cases are distinguishable from the present case, however. In *Budget System*, the Court found that the plaintiff had proved that secondary meaning attached to its use of the word without specifically stating the classification of "budget." In *Budget Rent-A-Car* the plaintiff was in the business of renting automobiles on a discount basis, its prices being lower than the three leaders—Hertz, Avis and National. The Court considered the dictionary definitions of "budget" and concluded that: "none of the above definitions are descriptive or 'merely descriptive' of either the rent-a-car business in general or the rent-a-car business conducted by the plaintiffs and the defendant." It is clear then that since the parties in *Budget Rent-A-Car* were in the business of renting cars on a discount basis, and the Court found that "budget" did not describe the nature of such business, "budget" and "discount" do not correspond in usage and meaning as is urged by the plaintiff herein.

The Court finds the decision in *Imported Auto Parts Corp. v. R. B. Shaller & Sons, Inc.*, 202 U.S.P.Q. 235 (Minn.1977), to be more similar to the present action. In that case the Court found "Imported Auto Parts" to be a generic trade name. The plaintiff was in the business of selling imported auto parts and:

[t]he name it has chosen for itself describes the nature of that business in the most general manner practicable. It is true that "Imported Auto Parts" is a subset of the more general term "auto parts," but no more general term is available that would accurately describe the products comprising plaintiff's trade. "Imported Auto Parts" does not impart any specific source of imported auto parts—it is indicative only of plaintiff's trade and not its stores. Hence, the term is generic and is not the property of plaintiff.

*Id.* at 238. See also, *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 196 U.S.P.Q. 121 (D.Or.1976).

As in *Imported Auto Parts*, the plaintiff in the present action has chosen to operate under the most general term available to it in an attempt to describe the products it sells and the manner in which it sells them. "Discount Muffler" is a generic trade name and the plaintiff cannot acquire either common law trade name protection or exclusive use protection in the generic term. *S. S. Kresge v. United Factory Outlet, Inc., supra; Keebler Co. v. Rovira Biscuit Corp., supra; Kellogg v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

Even if the Court agreed with the plaintiff that "discount" is descriptive, the plaintiff has failed to demonstrate that it has acquired secondary meaning in the Toledo area market.

In order to establish secondary meaning "the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). The plaintiff bears the burden of proof and "[a] high degree of proof is necessary to establish secondary meaning for a descriptive term." *R. Callmann, The Law of Unfair Competition, Trademarks, and Monopolies* § 77.3 (3d ed.) at 359; *American Heritage, supra*, 494 F.2d at 12; *Vision Center, supra*, 596 F.2d at 118, 202 U.S.P.Q. at 340.

In deciding a claim of secondary meaning:

> it is appropriate to consider (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture.

*R. Callmann, The Law of Unfair Competition, Trademarks, and Monopolies* § 77.3 (3d ed.) at 359. Ultimately, however, "the crucial issue is not the effort which was made to create it but the effectiveness of that effort," *Id.* at 360, and the chief inquiry is directed toward the consumer's attitude about the mark in question, does it denote to him or her "a single thing coming from a single source?" *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970); *Aloe Creme Laboratories, Inc. v. Milsan*, 423 F.2d 845, 849 (5th Cir. 1970), *cert. denied*, 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970); *American Heritage, supra*, 494 F.2d at 12. Many courts have stressed the importance of direct evidence of public recognition in the form of surveys or similar evidence. *Vision Center v. Opticks, Inc., supra*, 596 F.2d at 119, 202 U.S.P.Q. at 341; *Miller, supra*, 503 F.Supp. at 914, 208 U.S.P.Q. at 937; *Surgicenters, supra*, 196 U.S.P.Q. at 124. The lack of an objective survey of the public's perception of the plaintiff's name was an important factor in the decisions in *Vision Center* and *Surgicenters*.

In the case *sub judice* the plaintiff did not present any evidence of an objective survey to demonstrate that "Discount Muffler" means the plaintiff's shops to the purchasing public in the Toledo area market. The evidence which the plaintiff presented relevant to secondary meaning was the length and manner of use of "Discount Muffler," the nature and extent of advertising and promotion of "Discount Muffler,"[1] and testimony as to confusion between the plaintiff's and defendant's shops on Laskey Road.[2]

■ The plaintiff's use of the name "Discount Muffler Shop" since 1970 and its advertising and promotional efforts are insufficient to establish secondary meaning in this case. The plaintiff relies most heavily on its evidence concerning consumer confusion to establish the existence of secondary meaning. While consumer confusion within the particular market is one indicia of secondary meaning, *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293 (9th Cir. 1971), proof of confusion, "in and of itself, does not establish that one party's use of a name has given it a secondary meaning." *Miscellaneous, Inc. v. Klein's Fashions, Inc.*, 452 Pa. 62, 305 A.2d 22 (1973).

Although two witnesses testified that they were confused because of the closeness of the defendants' franchise at 1705 Laskey Road to the plaintiff's shop at 2113 Laskey Road, they did not testify that the words "discount muffler" meant the plaintiff's business to them. In addition, there was no evidence that these two witnesses were representative of potential customers for the plaintiff's services. The plaintiff's evidence is insufficient to carry the plaintiff's burden of proof that the words "discount muffler" have acquired secondary meaning in the Toledo area market. Therefore, the plaintiff has not demonstrated a probability of

---

1. *See*, Findings of Fact 18 and 19.

2. *See*, Findings of Fact 33 and 34.

success at trial and it is inappropriate to grant the plaintiff's request for a preliminary injunction.

## B. MOTION TO DISMISS

■ The defendants seek an order dismissing the complaint in this case. The defendants assert that dismissal is appropriate because the named plaintiff is not the real party in interest as required by Rule 17(a) of the Federal Rules of Civil Procedure. Rule 17(a) states:

(a) REAL PARTY IN INTEREST. Every action shall be prosecuted in the name of the real party in interest.

The real party in interest is "the party, who by the substantive law, has the right to be enforced." *3A Moore's Federal Practice* ¶ 17.07, at 17–65 (2d ed. 1979). The real party in interest in trademark and trade-name litigation is "he who, by the substantive law—whether common law or federal, has the right sought to be enforced." *Id.,* ¶ 17.11[3], at 17–147. The owner of an allegedly infringed right has been treated as an indispensable party and thus an action for trade name or trademark infringement must be dismissed in the absence of the trade name or trademark owner. *Pure Food Products, Inc. v. American Bakeries Co.,* 176 U.S.P.Q. 233 (N.D.Ill.1972).[3]

The defendants assert that the plaintiff corporation, Discount Muffler Shop, Inc., has no rights in the trade name "Discount Muffler" and thus cannot be a real party in interest in this action. The defendants rely

on a number of documents for their contention. On April 4, 1973, John P. Decker obtained a Certificate of Registration for an Ohio Trade Name, RN35731,[4] from the Secretary of State. On October 1, 1973 John P. Decker d/b/a Discount Muffler Shop, granted, by bill of sale, all the assets of the business to an Ohio corporation, Discount Muffler Shop, Inc.[5] This bill of sale did not specifically mention any rights to trademark or trade name use of "Discount Muffler." On March 28, 1978, John P. Decker obtained a renewal of his Certificate of Registration for an Ohio Trade Name, RN35731.[6] The defendants' contention, based on the aforementioned documents, is that any rights in the trade name "Discount Muffler Shop" reside in John P. Decker, an individual not presently before the Court.[7]

■ Although the defendants rely on the Ohio trade name statutes[8] for their motion to dismiss, the plaintiff's cause of action is for the defendants' alleged infringement of the plaintiff's common law trademark rights in the mark "Discount Muffler Shop." In *Younker v. Nationwide Mut. Ins. Co.,* 175 Ohio St. 1, 191 N.E.2d 145 (1963), the Supreme Court of Ohio stated:

The rights in trademarks, trade names and service marks are acquired by actual user and not by registration. Such rights belong to the one who first actually adopts and uses the name or mark in connection with his business .... The

---

3. In its decision the Court stated, at p. 234:
This Court holds that the general rule that the owner of the allegedly infringed right is an indispensable party applies here. Because Breddo (owner of certain trademark rights sought to be enforced) is such a party and cannot be joined and, considering the factors set out by Rule 19(b), the motion to dismiss is hereby granted.

4. Plaintiff's Exhibit 3.

5. Plaintiff's Exhibit 8.

6. Plaintiff's Exhibit 5.

7. The defendants also rely on language in the plaintiff's petition for cancellation of the defendant's Federal Registration No. 1,042,467 that:

Petitioner, as an individual proprietor is the owner and exclusive user of Ohio State Trade Name Registration No. 35731 for the trade name DISCOUNT MUFFLER SHOP granted on April 4, 1973 and renewed on March 28, 1978 for an additional five (5) years.
The "petitioner" however, is Discount Muffler Shop, Inc., and not John P. Decker. John P. Decker signed the petition in his official capacity as president of the plaintiff corporation. Therefore this statement in the petition for cancellation is not supportive of the defendants' allegation as to ownership of the right to use of the trade name.

8. Ohio Revised Code §§ 1329.01 *et seq.*

qualified property rights are such names and marks and the right to protection thereof arise as a matter of common law, not as a matter of statute. The registration statutes merely implement the common-law rights and create certain procedural advantages.

*Id.* at 6–7, 191 N.E.2d 145. (Citations omitted). *Accord, Wrist-Rocket Manufacturing Co., Inc. v. Saunders,* 379 F.Supp. 902 (D.Neb.1974); *E. F. Prichard Co. v. Consumers Brewing Co.,* 136 F.2d 512 (6th Cir. 1943); *Steem-Electric Corp. v. Herzfeld-Phillipson Co.,* 118 F.2d 122 (7th Cir. 1940); *P. H. Schneider Brewing Co. v. Century Distilling Co.,* 107 F.2d 699 (10th Cir. 1939).

Unless there is evidence to the contrary, trademarks or trade names will be assumed to have passed, without formal assignment, to one to whom the business has been transferred. *P. H. Schneider Brewing Co. v. Century Distilling Co., supra; United States Ozone Co. v. United States Ozone Co.,* 62 F.2d 881 (7th Cir. 1932); *Hall's Safe Co. v. Herring-Hall-Marvin Safe Co.,* 146 F. 37 (6th Cir. 1906), *mod. on other grounds & aff'd,* 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616 (1908).

In the present action, the general language used in the bill of sale from John P. Decker to Discount Muffler Shop, Inc. was broad enough to include the trademark or trade name "Discount Muffler Shop." Thus, although the trade name was not formally transferred in writing pursuant to § 1329.06 of the Ohio Revised Code until March 14, 1981,[9] the common law right was transferred with the bill of sale on October 1, 1973.[10] Therefore, Discount Muffler Shop, Inc. owned the right to the trademark or trade name at the time this suit was instituted and is the real party in interest

as required by Rule 17(a) of the Federal Rules of Civil Procedure.

### III.  CONCLUSIONS OF LAW

1.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1338. Venue is properly laid in this district because this is the district in which the cause of action arose. 28 U.S.C. § 1391(b).

2.  The plaintiff has chosen generic words to use as its assumed name and such generic terms are not entitled to protection. Even if the words "discount muffler" were considered descriptive, on the basis of all the evidence the plaintiff has failed to prove that its assumed name has acquired secondary meaning in the Toledo area market.

3.  The plaintiff having failed to show a substantial likelihood of success on the merits at trial, its motion for preliminary injunction is unwarranted.

For the foregoing reasons,

IT IS ORDERED that the plaintiff's motion for a preliminary injunction should be, and hereby is, overruled.

IT IS FURTHER ORDERED that the defendants' motion to dismiss should be, and hereby is, overruled.

---

**9.**  Plaintiff's Exhibit 11.

**10.**  John P. Decker's renewal of the trade name and subsequent transfer to Discount Muffler Shop, Inc. of the trade name are some evidence contrary to the conclusion that the right of use passed with the bill of sale. Since the bill of sale, however, the name has been used exclusively by the corporation. John P. Decker has not made nor attempted to make any use of the name as an individual, and does not now claim any such right. Therefore the Court concludes that the evidence in favor of the plaintiff is insufficient to withstand the defendants' motion to dismiss.