169 So.2d 77

**STRAUS FRANK COMPANY**

v.

**Curlin BROWN.**

**No. 47098.**

Nov. 9, 1964.

Rehearing Denied Dec. 14, 1964.

Knight & Knight, Herschel N. Knight, Jennings, for defendant-relator.

Oliver P. Stockwell, Plauché & Stockwell, Lake Charles, for plaintiff-respondent.

SUMMERS, Justice.

Plaintiff, Straus Frank Company, operating auto parts and supply stores in the city of Lake Charles and the town of Sulphur under the trade name of "Lake Auto Parts", sought damages and an injunction to restrain the defendant, Curlin Brown, from the use of the trade name "Lake Auto Supply" in the conduct of his business of selling auto parts and supplies in the town of Lake Arthur. The trial court denied plaintiff's demands and dismissed its suit. . The Court of Appeal, Third Circuit, reversed the trial court, denied the claim for damages and granted plaintiff the injunction it sought. (159 So.2d 570). We granted certiorari to review that judgment.

Lake Auto Parts was organized by J. L. Van Norman and W. P. Logan as a partnership in 1932. Later, in 1943, Van Norman acquired Logan's interest and conducted the business under the same name until it was incorporated in 1958. After incorporation

the name "Lake Auto Parts" continued to be used until the business was sold in 1961 to plaintiff Straus Frank Company, which retained the same name. The business has consisted, since its inception, of a wholesale auto parts enterprise selling to garages, service stations, car dealers, fleets, etc., with some retail sales. It is now conducted from a main store with two branch stores in Lake Charles and one branch store in Sulphur. All of the operations cover an area of approximately 60 miles surrounding Lake Charles, including all or parts of the parishes of Calcasieu, Cameron, Jefferson Davis, Beauregard, Allen and Acadia.

The area outside of Lake Charles is worked by three salesmen, who visit the territories assigned to them weekly, including the small town of Lake Arthur (population 3,541) approximately 45 miles from Lake Charles.

An advertising campaign was carried on by Lake Auto Parts, consisting of direct mailing pieces, calendars and bulletins, with some of the material being distributed to its customers by the salesmen. This advertising material makes no reference to Lake Arthur, but does list the addresses of plaintiff's stores in Lake Charles and Sulphur.

The defendant, Curlin Brown, who lives in the town of Eunice, where he formerly worked for his father in a similar business, opened the store which is in controversy in Lake Arthur in April 1961. It is a walk-in business operated by one employee. A similar store is owned and operated by defendant in Welsh, known as "Welsh Auto Supply", also a trade name. The Lake Arthur business is about three-fourths retail and one-fourth wholesale. To some extent, therefore, plaintiff's and defendant's businesses are competitive. Defendant concedes that he had prior knowledge that plaintiff's business existed and was being conducted in the name of Lake Auto Parts.

Attention was first drawn to defendant's business by plaintiff's salesmen working in the Lake Arthur area and by errors in billing which confused the names of the two businesses. These billing errors occurred about six times and have not recurred since April 1962 when the suit was filed.

Plaintiff has lost no customers since defendant's business began but there has been a reduction in the volume of plaintiff's business.

There were some inquiries of plaintiff's salesmen by customers in the Lake Arthur area as to whether the new business, Lake Auto Supply, was connected with Lake Auto Parts; but this question was promptly clarified and no confusion among the customers was shown to exist thereafter. Some sales are made by plaintiff to farmers in the area. These customers are channeled to it through association of the purchasers with, or their inquiry from, some of plain-

tiff's customers or establishments familiar with its business. There has been no confusion among these customers because of the similarity of defendant's trade name.

Testimony of a former employee of defendant in the Lake Auto Supply store in Lake Arthur shows that three or four persons made inquiries as to whether Lake Auto Supply and Lake Auto Parts were the same business. The matter was promptly clarified by the employee.

Plaintiff's and defendant's trade names are a combination of a geographical designation and words descriptive of the businesses in which each is engaged. The geographical designation consists of the word "Lake" in each name. Each of the businesses is located in a municipality situated on the shores of a lake after which the community is named—Lake Charles in one instance and Lake Arthur in the other. The descriptive words in the names are readily apparent—"Auto Parts" and "Auto Supply", describing the nature of the respective businesses, which is to sell and furnish auto parts or supplies.

■ The law of this State has long recognized that trade names will be protected against unfair use, simulation, or imitation. Marcev v. Mandich et al., 158 La. 15, 103 So. 389 (1925); Arbutnot, Latham & Co. v. Cage Drew Co., 6 Orleans App. 374 (1909).

■ This does not mean that mere geographic names, or words and terms designating or describing a trade or occupation, or indicating that a particular class of goods is dealt in, can be exclusively appropriated by one as a trade name. The reason for this is that words of this character are in the public domain and not subject to exclusive appropriation, for if one person could acquire an exclusive right thus to designate his place of business no others engaged in the same business could properly so designate theirs. No one is entitled to a monopoly on such words under ordinary circumstances. Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (1946); 52 Am.Jur. Trademarks, Tradenames, etc. §§ 60, 66.

■ However, when a geographic name or descriptive words constituting a trade name by long usage have acquired a secondary meaning, then the name identifies exclusively the particular business conducted by the user. Thus a superior right to its use may be acquired by the person who first adopted it, and he is entitled to protection under the law of unfair competition against unfair use thereof by a competitor. Home Beverage Service v. Baas, supra; 52 Am.Jur., Trademarks, Tradenames, etc., § 72. This much of the law is clear, and we will assume that because of its long usage by plaintiff, the trade name Lake Auto Parts has acquired a secondary meaning.

The central issue in this case, however, presents the legal question: Is it necessary to establish fraud on the part of the party who has adopted a trade name similar to one which has acquired a secondary meaning in order that he may be enjoined from the use of the similar name?

In a case rested on the doctrine of secondary meaning, it is recognized that the authorities are not in agreement as to whether it is necessary for the plaintiff to show actual fraud on the part of the defendant. See Annotation to Cleo Syrup Corp. v. Coca-Cola Co., 150 A.L.R. at page 1133; also, 52 Am.Jur., Trademarks, Trade-names, etc., § 82.

The law in Louisiana, however, is clear in this respect. The latest expression of this court is contained in Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (1946). There, even though the plaintiff's trade name descriptive of its business was assumed to have acquired a secondary meaning, the plaintiff was denied injunctive relief against the defendant user of a similar trade name because "the defendant was not guilty of unfair competition, specifically, of any representation that the business establishment conducted by him was the establishment owned and conducted by the plaintiff."

Prior to the decision in the Home Beverage Service case, this court observed in New Orleans Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944) that, "The law's protection against unfair competition by the use of another's trade name rests upon the *deceit or fraud* which the newcomer in the business practices,—not only upon the one already established in the business but also upon the public." In Albrecht v. Del Bondio, 188 La. 502, 177 So. 587 (1937) we had occasion to declare that, "No one will be permitted to use even his own name with the *fraudulent* intention of appropriating the good will of a business established and built up by another person of the same name." Again in Yellow Cab Co. of New Orleans v. Jones, 156 La. 837, 101 So. 216 (1924) it was noted that in such cases "unfairness and *fraud* is the basis of the action."

These authorities are convincing. In this state it is a prerequisite to injunctive relief that fraud be established on the part of the defendant and the burden of establishing that fraud is upon the plaintiff. The law has always been reluctant to presume fraud.

Inasmuch as the threefold object of the law in unfair competition cases is: (1) To protect the honest trader in business which fairly belongs to him, (2) to punish the dishonest trader who is taking his competitor's business away by unfair means, and (3) to protect the public from decep-

tion,[1] we will view the facts of this case with these objectives in mind.

First, we are concerned with the protection of the honest trader (plaintiff) in the business which fairly belongs to him. The facts show that plaintiff has lost no customers since defendant went into business as his competitor in the Lake Arthur area, but there has been a reduction in the volume of plaintiff's business. It is evident to this court that the reduction in the volume of plaintiff's business is not due to any unfair practice on the part of the defendant, rather, the clear inference from the records is that the reduction in volume of plaintiff's business is because defendant is in a better position to give quicker service to the customers in the Lake Arthur area since his business is located there and delivery accompanies the purchase; whereas, plaintiff's salesmen must take the customer's orders and make deliveries a week later on their return trip or by shipment from Lake Charles. Likewise, in dealing with defendant, prospective customers need not wait until the salesman arrives in Lake Arthur to place an order, because they can make immediate purchases from defendant's conveniently located store. Aside from this inference, the affirmative proof establishes that on the rare occasions when inquiry was made of defendant's employee, whether the defendant's business was the same as plaintiff's, the information was promptly and honestly imparted that the businesses were not the same. Also, there has been no evidence of any confusion among any one having relations with these two businesses since April 1962. Plaintiff, therefore, needs no injunction against defendant to protect plaintiff against the loss of business which fairly belongs to him. The law will certainly not protect him against better service resulting from legitimate competition.

Secondly, the question is whether the defendant should be punished by injunction because he is taking his competitor's business by unfair means. As we have already noted, there has been no showing whatsoever that plaintiff is losing business because of the similar trade name adopted by defendant, nor does the record reveal any attempt on defendant's part to make any misrepresentation or that he is otherwise guilty of conduct which could be considered unfair. To the contrary, it should be recalled, defendant has no solicitors or salesmen at work for his is a walk-in business; the inference being that the business he gets in the Lake Arthur area comes to him without active solicitation and because of the convenient location of his store.

And, lastly, because Lake Arthur is a small town, and plaintiff has only a small

---

1. 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 14.

number of customers in that area, the general public has not been deceived there and the prospect of the general public being deceived by the two names does not exist.

One other charge leveled at defendant is that he knew of plaintiff's trade name and by adopting a similar one it may be inferred his motive was fraudulent. But we are not convinced of this. To the contrary, aside from the words "Auto Supply" which describes his business, we feel defendant was motivated by the geographical location in the selection of the name Lake Auto Supply, situated as the business is in the town of Lake Arthur which lies on the shores of Lake Arthur. Defendant further explained this selection when asked why he did not adopt the full name of the town and call his business Lake Arthur Auto Supply as he did when he selected Welsh Auto Supply. His plausible explanation was that he wanted a more abbreviated name. Thus the geographical name was a motivating factor in the selection of the trade name, as was the selection of the name of defendant's other store, Welsh Auto Supply, also fashioned from the name of the town where the business was located.

We conclude that there has been no showing of any fraudulent practice on defendant's part and none can be reasonably inferred from the circumstances of this case.

For the reasons assigned the judgment of the court of appeal is reversed and set aside and the judgment of the trial court denying the injunction is reinstated and made the judgment of this court.

169 So.2d 82