552 So.2d 599 (1989)
Robert HEAD, d/b/a Metal Check, and Original Metal Check, Inc., a Texas Corp., formerly Metal Check, Inc., Plaintiffs-Appellees,
v.
Jerry WAGGONER and Janice Gates individually and as Incorporators of Metal Check, Inc., a Louisiana Corporation, and Metal Check, Inc., a Louisiana Corporation, Defendants-Appellants.
No. 20873-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Rehearing Denied December 1, 1989.
*600 James D. Caldwell, Jonesboro, for defendants-appellants.
Richard M. Lawrence, Prairieville, Philip Bohrer, Baton Rouge, for plaintiffs-appellees.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendants, Jerry Waggoner and Metal Check, Inc., appeal from a trial court judgment granting a preliminary injunction in favor of the plaintiffs, Robert Head, d/b/a Metal Check, and Original Metal Check, Inc., a Texas corporation, formerly Metal Check, Inc., enjoining the defendants from using the trade name "Metal Check." For the following reasons, we amend the judgment of the trial court, and as amended, affirm.

FACTS
In 1973, Robert Head and a partner formed a company called Signal Testing, Inc. This company engaged in the business of industrial x-ray of welded metal joints in pipelines. In about 1974, Mr. Head hired Jerry Waggoner to work for this company. In 1975 or 1976, Mr. Head formed Metal Check, which was identical to Signal Testing except that it worked nonunion jobs, while Signal Testing worked only union jobs. Both Metal Check and Signal Testing used the same offices, equipment and personnel. Metal Check was incorporated in Texas in 1980 by three nominees of Mr. Head. The West Monroe offices of Metal Check and Signal Testing were housed in a building owned by the company of Mr. Head's partner in Signal Testing.
In late 1983, Mr. Head suffered a heart attack and was incapacitated for several months. At this time, Mr. Head turned over everyday operations of Metal Check to Mr. Waggoner. After his convalescence, Mr. Head apparently moved his personal offices to a building across the street.
As manager, Mr. Waggoner borrowed money in Metal Check's name. In 1980, also as manager, he applied for and obtained a radioactive material license in the name of Metal Check. In 1984 or 1985, he negotiated to buy Signal Testing, but the purchase did not occur because he failed to obtain the necessary financing. On January 21, 1985, Metal Check's Texas charter was forfeited due to its failure to pay the state franchise tax. In December, 1987, without Mr. Head's knowledge, Mr. Waggoner incorporated a company called "Metal Check of Louisiana, Inc."
In early March of 1988, Mr. Head accidentally discovered evidence of the formation of this corporation in the desk of Janice Gates, a secretary employed by Mr. Head to work for Signal Testing and Metal Check. The documents listed Mr. Waggoner as owner of the new Metal Check Corporation. Mr. Head confronted Mr. Waggoner with this discovery and fired him. Mr. Head also discovered bank statements for checking accounts at various banks in the name of Metal Check of Louisiana, and indications that accounts receivable of Metal Check in the amount of $221,000 had been diverted to these bank accounts. On March 17, 1988, about one week after his discharge by Mr. Head, Mr. Waggoner became an incorporator of yet another company, "Metal Check, Inc.," a Louisiana corporation. In April of 1988, Mr. Waggoner applied to the Louisiana Secretary of State to amend the name of "Metal Check of Louisiana, Inc.," to Northeast X-Ray Services, Inc.
*601 On June 15, 1988, the plaintiffs filed a petition for injunctive relief, seeking to prevent the defendants from using the trade name "Metal Check, Inc." or any variation thereof. Named as defendants were Mr. Waggoner, Ms. Gates, and Metal Check, Inc.
On June 30, 1988, the defendants filed exceptions of improper venue, unauthorized use of summary proceedings, and lack of procedural capacity. On October 7, 1988, the plaintiffs filed a first amending and supplemental petition to cure several of the alleged deficiencies in the original petition. In response to the defendants' exception of lack of procedural capacity, the plaintiffs amended their petition to provide that suit was brought by Mr. Head doing business as Metal Check, and "Original Metal Check, Inc., a Texas corporation, formerly Metal Check, Inc." (Apparently, Mr. Head could not reincorporate Metal Check in Texas under the name previously utilized because Mr. Waggoner had filed a reservation on that name.) On October 27, 1988, the defendants filed exceptions of lack of procedural capacity, no cause of action, and no right of action. On October 28, 1988, the plaintiffs were allowed to file into the record, proof of Original Metal Check's authorization to do business in Louisiana as of October 19, 1988.
On October 31, 1988, a hearing was held. The defendants' exception as to procedural capacity was dismissed by agreement of the parties as having been satisfied. The trial court overruled the two remaining exceptions of no cause and no right of action. In support of its request for preliminary injunction, the plaintiffs presented the testimony of Robert Head, David Nelson, Danny Schooley and Charles Taylor. Mr. Nelson testified that he was one of Metal Check's incorporators as a nominee of Mr. Head. He testified that Mr. Head owned the company. Mr. Schooley and Mr. Taylor testified as to their employment by Signal Testing and/or Metal Check. They testified that Mr. Head was the owner of Metal Check and that Mr. Waggoner was employed as its manager. The plaintiffs also called Mr. Waggoner on cross-examination.
The defense presented the testimony of James Spillers, Frederick Hightower, Janice Gates and Mr. Waggoner. Mr. Spillers, an accountant who kept the Metal Check books, testified that Mr. Waggoner hired him. He denied that Mr. Head hired him or requested the books and records. (On rebuttal, Mr. Head and a secretary for plaintiffs' counsel contradicted him on these two points. The secretary testified that Spillers admitted having the books and turning them over to Waggoner.) Hightower, the assistant vice president and cashier of People's Bank of Chatham, testified that Mr. Waggoner, identifying himself as president of Metal Check, opened a checking account for Metal Check in February of 1982. He also stated that Mr. Waggoner, who is now on the bank's Board of Directors, had obtained several loans for Metal Check.
Ms. Gates testified that she was originally Mr. Head's secretary, but that she currently worked for Waggoner's Northeast X-Ray Services. Mr. Waggoner testified he had a great deal of money invested in Metal Check and had equipment in its name. Also, he stated that he had a radioactive material license dated March 28, 1980, in Metal Check's name, which he still used. He claimed that when he obtained the license for Metal Check he was not aware that Mr. Head was using that name. He stated that Mr. Head "walked out" on the x-ray business and that he consequently assumed day-to-day operations without any instructions from anyone.
The trial court rendered judgment in favor of the plaintiffs. The court found that Mr. Waggoner was fully aware of Mr. Head's use of the trade name "Metal Check." The court stated that the defendants' use of the trade name in such a limited area of the industry caused confusion and infringed on the plaintiffs' rights. As an example of this confusion, the trial court referred to the license issued by the Louisiana Radiation Control Board. Although Mr. Waggoner applied for the license while an employee of Mr. Head, he is allowed to use it for his present company.
The trial court overruled the defendants' exceptions of no right and no cause of *602 action and granted a preliminary injunction against Waggoner and Metal Check, Inc., prohibiting them from using the trade name "Metal Check" or any similar variation thereof. As to the other defendant, Ms. Gates, the court found that she was merely Mr. Waggoner's employee and declined to render judgment against her. Judgment was signed November 22, 1988.
The defendants, Mr. Waggoner and Metal Check, Inc. appeal. They assert four assignments of error: (1) the trial court erred in granting judgment in favor of a party who allegedly was not a party to the suit at the time judgment was granted; (2) the trial court erred in overruling the exception of no cause of action; (3) the trial court erred in holding that the plaintiffs were entitled to exclusive use of a trade name; and (4) the trial court erred in granting injunctive relief against the use of a trade name where the trial court allegedly failed to make a finding of fraud.

PARTY IN JUDGMENT
The defendants contend that the trial court erred in rendering judgment in favor of "Metal Check," instead of "Original Metal Check." They argue that the plaintiffs' first supplemental and amending petition substituted "Original Metal Check, Inc." for "Metal Check, Inc."; thus, a judgment was rendered in favor of a party who was not a party to the suit at the time judgment was granted.
The two cases cited by the defendants are inapplicable. In Vicknair v. Home Indemnity, 273 So.2d 542 (La.App. 1st Cir. 1973), the court held that no judgment could be rendered in favor of the plaintiff's husband who had never been a party plaintiff in the suit. In Mitchell v. Zeringue, 497 So.2d 19 (La.App. 5th Cir.1986), the court found that a judgment had no effect because it was granted against a party who had already been dismissed from the suit pursuant to an exception of no cause of action.
The plaintiffs originally brought suit as Robert Head, d/b/a Metal Check, and Metal Check, Inc., a Texas corporation. The defendants filed several exceptions, including one for lack of procedural capacity, in which they allege that Metal Check, Inc., had forfeited its corporate charter in Texas in 1985 and it was not authorized to do business in Louisiana. However, the efforts of Metal Check, Inc., to have its Texas charter reissued were purposefully frustrated by Mr. Waggoner, who twice filed a reservation on that corporate name. Therefore, Mr. Head had the charter reissued in the name "Original Metal Check, Inc." Additionally, the corporation, under this modified name, qualified to do business in Louisiana as of October 19, 1988. Accordingly, the plaintiffs' first supplemental and amending petition reflected this name modification.
We agree with the plaintiffs that the name change served only to clarify and distinguish Mr. Head's corporation from that of Mr. Waggoner. It did not alter the parties to the suit. Further, the use of the name "Metal Check, Inc." in the judgment is a mere clerical error and is of no substantive effect.
This assignment of error has no merit.

EXCLUSIVITY OF USE
The defendants argue that the trial court erred in overruling its exception of no cause of action where the plaintiffs' petition for injunctive relief failed to specifically allege that the plaintiffs had acquired exclusivity in the use of the trade name "Metal Check."
Exclusivity of use is a prerequisite to an injunction in trade name cases. Givens Jewelers, Inc. v. Givens, 380 So.2d 1227 (La.App. 2d Cir.1980), writ denied 383 So.2d 800 (La.1980). However, LSA-R.S. 51:211(D) defines "trade name" as "a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others." Exclusivity of use by a person is implicit in this definition. It was not incumbent upon the plaintiffs to fully define the term in the petition. As to the exception of no cause of action, it was sufficient for the plaintiffs to allege that *603 "Metal Check" was the company's trade name.
This assignment of error has no merit.

CLASSIFICATION OF TRADE NAME
The defendants further contend on appeal that the trial court erred in holding that the plaintiffs were entitled to exclusive use of the trade name "Metal Check," where the trade name was merely descriptive of the service offered by Mr. Head's company.
The threefold object of the law of unfair competition (upon which plaintiffs relied for relief) is: (1) to protect the honest trader in business which fairly belongs to him; (2) to punish the dishonest trader who was taking his competitor's business away by unfair means; and (3) to protect the public from deception. Straus Frank Company v. Brown, 246 La. 999, 169 So.2d 77 (1964).
The courts have held that a trade name which is only descriptive of the kind of business involved cannot be exclusively appropriated unless it has acquired a "secondary meaning by a long usage and thus come to exclusively identify the user's particular business. Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (1947); Straus, supra.
Traditionally, federal courts have divided trade marks and trade names into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Engineered Mechanical Services, Inc. v. Applied Mechanical Technology, Inc., 584 F.Supp. 1149 (M.D.La.1984). A descriptive trade name identifies a characteristic or quality of an article or service. A suggestive trade name suggests, rather than describes, some particular characterics of the goods and services to which it applies and it requires a consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods or services. However, "[t]hese categories, like the tones in a spectrum, tend to blur at the edges and merge together. The labels are more advisory than definitional, more like guidelines than pigeonholes. Not suprisingly, they are somewhat difficult to articulate and to apply." Engineered Mechanical Services, Inc., supra.
The defendants argue that the nature of the business at issue is checking metal pipelines by using x-ray machines for structural failure. However, the plaintiffs persuasively argue that the business is that of industrial x-ray to examine pipe welds. Plaintiffs concede that had the trade name been something such as "Pipe Weld X-Ray Examination," it would have been descriptive and thus insusceptible of injunctive relief.
The defendants rely upon Metalock Corporation v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La.App. 4th Cir.1972) writ denied 262 La. 189, 262 So.2d 788 (La.1972). In that case, the court stated that the word "Metalock" was descriptive of the service (a process of cold metal repair which involved "locking" pieces together). However, we note that in Engineered Mechanical Services, Inc., supra, a Louisiana federal district court faced the identical issue. It disagreed with Metalock Corporation, supra, finding instead that "Metalock" was suggestive, not descriptive.
We find that the trade name of "Metal Check" is not merely descriptive of the services offered by the plaintiff-company. Rather, we find that it is more suggestive, requiring the consumer to use his imagination to conclude what services are offered. Metal can be "checked" in a variety of ways. Also, one can examine all sorts of "metal" in various forms. The service at issue here is the x-ray examination of welded pipes. Certainly, the terms involved in the present suit are not as clear as "Pestaway," which informed the public that a company was engaged in pest control or extermination. Couhig's Pestaway Company, Inc. v. Pestaway, Inc., 278 So.2d 519 (La.App. 3rd Cir.1973).
This assignment of error is without merit.

EVIDENCE OF FRAUD
The defendants argue that the trial court erred in granting injunctive relief against *604 them to prohibit their use of the trade name "Metal Check" where the trial court failed to make a specific finding of fraud.
Louisiana courts have held that a plaintiff who depends upon "secondary meaning" for his trade name cannot obtain injunctive relief unless he proves fraud on the part of the defendant. Home Beverage Service, supra; Straus Frank Company, supra; Couhig's Pestaway Company, Inc. v. Pestaway, Inc., supra. As previously mentioned, a plaintiff relies upon "secondary meaning" when the trade name is descriptive. As we have already found that the trade name "Metal Check" is not merely descriptive, plaintiffs apparently are not required to prove fraud by the defendants.
However, even were we to assume that the trade name was descriptive and a showing of fraud was thus required under the doctrine of secondary meaning, we find that the plaintiffs presented ample evidence of fraud by Mr. Waggoner. Although the trial court failed to use the word "fraud," its written reasons for judgment clearly demonstrate that it found credible evidence of fraud in the record, particularly since the trial court found that Mr. Waggoner "was fully aware of Mr. Head's use of the name `Metal Check'...."
The evidence presented at trial demonstrates that Mr. Waggoner was employed by Mr. Head's company, Signal Testing, Inc., beginning in 1974. Within two years, Mr. Head was using "Metal Check" to secure non-union jobs. In 1980, Mr. Head orchestrated the incorporation of Metal Check in Texas. In 1980, identifying himself as "manager," Mr. Waggoner applied for a radioactive material license in Metal Check's name. In late 1983, Mr. Head was strickened by a heart attack, consequently resulting in Mr. Waggoner's assumption of everyday operations of Metal Check and Signal Testing. Thereafter, in 1987, Waggoner, who was still employed by Head, incorporated "Metal Check of Louisiana, Inc." In March of 1988, Mr. Head discovered this action and fired Mr. Waggoner, who almost immediately incorporated another entity, "Metal Check, Inc." The following month, Waggoner applied to change the name of "Metal Check of Louisiana, Inc." to "Northeast X-ray Services, Inc."
Also, the evidence indicates that after dismissal by Mr. Head, Mr. Waggoner filed a change of address form with the U.S. Postal Service to have Metal Check's mail sent to him at his new office address. The testimony further indicated that some funds for Head's Metal Check were diverted to accounts for Waggoner's company. Mr. Waggoner continued to use for his own benefit a Metal Check radioactive material license which he originally obtained as an employee of Head's company. Twice he blocked Head's attempts to reincorporate Metal Check, Inc. in Texas.
Based on the foregoing, we can reach only one conclusionthat the plaintiffs proved fraud on the part of Waggoner, who deliberately used the plaintiffs' trade name for his own gain. There is no serious question that the defendants intentionally tried to capture the plaintiffs' trade name and compete against them in an identical business. The substance of the trade name utilized by the defendants is identical to that of the plaintiffs. The likelihood of the public being confused or deceived by the similarity in names is undeniable.
This assignment of merit is also without merit.

CONCLUSION
We amend the judgment to clarify that the name of the plaintiff-corporation is "Original Metal Check, Inc." The judgment of the trial court granting injunctive relief in favor of the plaintiffs is otherwise affirmed. All costs are assessed to defendants-appellants.
AMENDED, AND AS AMENDED, AFFIRMED.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, LINDSAY, NORRIS and HIGHTOWER, JJ.
Rehearing denied.