563 So.2d 1008 (1990)
MERIT INDUSTRIAL CONSTRUCTORS, INC.
v.
JE MERIT CONSTRUCTORS, INC. and UMC of Louisiana, Inc.
No. 89/CA/0934.
Court of Appeal of Louisiana, First Circuit.
July 5, 1990.
Daniel K. Rester, Baton Rouge, for plaintiff-appellant Merit Indus. Constructors, Inc.
G. Michael Pharis, Trial Atty., Baton Rouge, for defendant-appellee J.E. Merit Constructors, Inc. and UMC Louisiana, Inc.
Before CARTER, SAVOIE and ALFORD, JJ.
SAVOIE, Judge.
Plaintiff, Merit Industrial Constructors, Inc. (Merit), sued defendants, JE Merit Constructors, Inc. (JE Merit) and UMC of Louisiana, Inc., for trade name infringement, seeking damages and preliminary and permanent injunctions enjoining defendants from using the name "Merit" in the field of industrial construction. The trial court denied the request for preliminary injunction and from this ruling, Merit appeals.[1] *1009 Merit was incorporated in Louisiana on January 22, 1982, for the purpose of conducting industrial construction, repairs, and maintenance in Louisiana, particularly in the Baton Rouge area.[2] Merit registered its trade name "MERIT" on July 6, 1982, in accordance with the Louisiana statutes on trade marks and trade names, LSA-R.S. 51:211-51:300. Merit has used its trade name since February 1982.
Another industrial construction company and a competitor of Merit, UMC of Louisiana, Inc., was formed in 1978 as a subsidiary of UMC, Inc., a Texas corporation. In 1983, UMC, Inc. filed amended articles of incorporation with the Texas Secretary of State to change its name to JE Merit Constructors, Inc. These amended articles were filed in the several states where UMC, Inc. did business; the Louisiana filing occurred on December 12, 1983. However, UMC of Louisiana, Inc. continued to do business in Louisiana under that name. In the summer of 1988, UMC of Louisiana, Inc., began advertising its name change to JE Merit Constructors, Inc., Maintenance Division. UMC of Louisiana, Inc., actually did business and conducted operations in Louisiana under the name JE Merit Constructors, Inc. in January of 1989.
Following the advertisements of UMC of Louisiana, Inc.'s name change to JE Merit Constructors, Inc., Merit sent letters to UMC of Louisiana, Inc. seeking to prevent use of the term "Merit." The letters were not successful and Merit filed suit on January 10, 1989.
In a trade name infringement action, the primary issues are whether the plaintiff has a protectable property right in the name it seeks to exclude others from using, and, assuming that there is such a protectable property right, whether there has been infringement of that right, as judged by the standard of likelihood of confusion.[3]Security Center, Ltd. v. First National Security Centers, 750 F.2d 1295, 1298 (5th Cir.1985).
After the hearing on the preliminary injunction, the trial judge took the matter under advisement and then gave oral reasons for judgment. The trial judge initially stated that in deciding whether Merit was entitled to injunctive relief, he would consider the following four factors: whether there was a substantial likelihood that plaintiff would prevail on the merits of the case; whether plaintiff would suffer irreparable injury unless the injunction was issued; whether the threatened injury to plaintiff outweighed the damage the proposed injunction might cause the opposing party; and whether the injunction would be adverse to the public interest. The trial judge then examined the testimony in light of whether it was sufficient to show that plaintiff would prevail on the merits of the case. The judge then reasoned as follows:

*1010 The question as to whether or not the name is generic, whether or not the name is descriptive, suggestive, fanciful, is not extremely important at this time insofar as my ruling is concerned. Whether or not the plaintiff has a proper interest in the trade name `Merit' I think certainly is important in determining whether or not a preliminary injunction will issue. The court takes the position that even if there is a property interest in this particular name, I don't think in my opinion from the evidence I have heard that there has been any showing whatsoever that there is going to be any confusion or mistake between or in the public relative to these two particular names. Now I say this. I heard the evidence that was presented with regards to the quote, confusion. A lot of that wasn't confusion that was created by perhaps I think the names. We had an instance where a lease was entered into by plaintiff and the lessor put the wrong name in it.
I think that from the evidence I have at this point that those instances that were presented to the court occurred at the very beginning, and I can readily see at the initiation of the two names being used that there would be some confusion when both of them are in the same plant. I think that this was only temporary and I don't think that there has been a showing that there will be confusion so the court will not grant the preliminary injunction.
On appeal, Merit raises three assignments of error:
1. The Court erred in concluding plaintiff did not prove actual confusion or the likelihood of confusion sufficient to obtain injunctive relief.
2. The Court erred in applying the preliminary injunction requirements of LSA-C.C.P. art. 3601, et seq., rather than finding plaintiff satisfied the requirements for an injunction pursuant to LSA-R.S. 51:223.
3. In the alternative and only if the Court of Appeal concludes no error was made in applying LSA-C.C.P. art. 3601, the Court erred in concluding plaintiff failed to show:
a. strong likelihood of prevailing on the merits;
b. likelihood of harm and irreparable injury, which cannot be remedied by money damages;
c. an injunction will not harm the defendant; and
d. an injunction will not harm the public interest.
We pretermit discussion of Assignments of Error Nos. 1 and 3 entirely; we will discuss that part of Assignment of Error No. 2 which deals with whether Merit satisfied the requirements for an injunction pursuant to LSA-R.S. 51:223.[4] We pretermit discussion of whether the trial court was correct in applying "the preliminary injunction requirements of LSA-C.C.P. art. 3601" because we find that based on our Louisiana jurisprudence Merit did not meet its burden of proving that it had a protectable property right in the name "Merit."
Our Louisiana courts have held that "a trade name which is only descriptive of the kind of business involved cannot be exclusively appropriated unless it has acquired a `secondary meaning by a long usage and thus come to exclusively identify the user's particular business.[']. Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (194[6]); Straus, supra. [Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 *1011 (1964)]." Head v. Waggoner, 552 So.2d 599, 603 (La.App. 2d Cir.1989).
Traditionally, federal courts have divided trade marks and trade names into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Zatarain's, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 790 (5th Cir. 1983); Vision Center v. Opticks, Inc., 596 F.2d 111 (5th Cir.1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). A generic term is "`the name of a particular genus or class of which an individual article or service is but a member'," such as "aspirin." Zatarain's Inc., 698 F.2d at 790. A descriptive term "identifies a characteristic or quality of an article or service," such as "vision center" for a clinic providing optical goods and services. Vision Center, 596 F.2d at 115. A suggestive term "suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive," such as "Coppertone" as to suntanning products. Vision Center, 596 F.2d at 115-116. "An arbitrary or fanciful term bears no relationship to the product or service" to which it is applied, such as "Kodak" in regard to photographic supplies. Vision Center, 596 F.2d at 117.
The defendants contend that the word "merit" as used in the construction industry is a generic or at most descriptive term connoting a non-union employer, or an employer without a collective bargaining agreement. Merit contends that the term "merit" is not descriptive because it does not describe the type of services Merit renderspiping, electrical, structural and dirt work for new construction and maintenance work in area industries. Merit assigns the dictionary meaning of "merit" "reward or punishment due ... virtue ... character or conduct deserving reward, honor or esteem"to its name.
According to the testimony, the phrase "merit shop" was coined in 1962 by John Trimmer, former executive vice president of and present consultant to Associated Builders and Contractors (ABC). ABC was founded in 1950 in Maryland to challenge the closed shop the building trades unions had created. Because the unions were characterizing ABC as completely non-union, which it was not, Trimmer coined the term "merit shop" to describe ABC's philosophy. According to Trimmer's testimony and ABC literature, merit shop construction is free enterprise in the construction industry based on merit, rather than than on union or non-union membership. ABC promotes the idea that union and non-union firms can work together harmoniously, and that construction contracts should be awarded to the lowest responsible bidder, union or non-union. The term "merit shop" or "merit" began to be frequently used in the late seventies.
On September 16, 1980, a non-profit corporation named Pelican ChapterAssociated Builders & Contractors, Inc., was formed in Louisiana. Its motto is "Merit Shop Builds Louisiana Best." On June 9, 1981, a group of local merit shop industrial contractors formed a non-profit corporation named Merit Shop Industrial Contractors Association. Membership was limited to contractors "1) who have no collective bargaining agreement with any labor organization, 2) who regularly perform industrial construction and/or maintenance work and 3) who regularly perform such work in the Greater Baton Rouge, Louisiana industrial area." UMC of Louisiana, Inc. was an initial member of this corporation. Richard Gill, founder and former president of UMC of Louisiana, Inc. and founder and current president of Merit, was an incorporator and an initial director; it was his idea to name the organization Merit Shop Industrial Contractors Association based on ABC's philosophy and the fact that the name defined the membership. Merit Shop Industrial Contractors Association eventually "melted" into ABC.
According to Gill, who has been involved in the construction industry for at least fourteen years, "merit shop" was a phrase he first heard when he became involved with ABC; the phrase denoted ABC's philosophy which was explained by Gill as follows: "it doesn't matter whether you're union, non-union, whatever, the guy who's most capable of doing the work, or the *1012 contractor most capable of doing the work, should get it, should get the work. It did not mean open shop and still does not today."
Trimmer testified that the definition of terms such as "open shop," "merit shop," and "union shop" depends on the locality; he testified that he was not involved in the industrial construction field in the Baton Rouge area. Trimmer further testified that the phrase "merit shop" had meaning to ABC, not the term "merit." Finally, he said that the phrase "merit shop" was related to ABC and that he would be surprised if it were synonymous with an individual contractor.
The defendants presented the testimony of several witnesses regarding the term "merit." John Rigby, president of JE Merit who has twenty-seven years experience in the construction industry, testified that the word "merit" means "that the work is done without any reference to any affiliation with a bargaining agent, or without any reference to not being affiliated with a bargaining agent. It's been on a merit, or an ability to perform basis."
Donald Boutwell, an employee of JE Merit for five years and the chief executive officer of UMC of Louisiana, Inc. from 1984 through 1988, stated:
The word `merit' connotes, to me, a way to do business that we have chose to do, which is the American way, if you will, of awarding work on its merits, promoting people on their merit, and, indeed, awarding subcontracts on its own merit, irregardless [sic] of the affiliation of that subcontract; on the merit of the bid, on the merit of the analysis of the subcontractor's or person's ability to do this work; the free enterprise system, if you will. That's an ABC connotation, and we wholly subscribe to that.
Boutwell also testified that in his opinion there was no difference between a merit contractor and a merit shop contractor.
Gregory Landry, JE Merit's vice president who has twenty-three years experience in the construction industry and is familiar with terminology used, testified as to the meaning of the word "merit" as follows:
A. Merit basically means free enterprise, a company that works under a merit philosophy. Basically evaluate their employees and subcontractors purely on merits, on performance, who can do the most efficient job at the most efficient costs. Hire, promote, evaluate employees purely on their merits.
Q. Without regard to affiliation with the union?
A. Well in selectingI guess basically on a merit philosophy is that we're basically looked at as not having any affiliations with any collective bargaining agreements, but with free enterprise we basically select subcontractors whether they are union or merit jobs simply due to the reason that they can do the job at the most efficient cost.
Landry testified that he first heard the word "merit" used in the construction industry when he worked for a union company and their "competition was merit contractors and we had to I guess change our way of doing business to compete against merit contractors."
Defendants also presented the deposition testimony of William D'Armond, an attorney who for approximately twenty-four years has practiced labor law. D'Armond testified that he was familiar with the terminology used in labor management relations and that a merit shop is non-union and that a merit shop contractor is the same as a merit contractor. According to D'Armond, merit contractor "means that the employer's employees or the contractor's employees are not represented by a labor union." D'Armond said that "merit contractor" is "a commonly understood term by everyone in the industry."
Defendants also introduced evidence that the State Licensing Board for Contractors issued a license for building construction to Merit Construction of Bossier City, Louisiana, on January 1, 1988.
Gill testified that he chose the name "Merit" because he had heard someone in a *1013 seminar say that he ran his company as a "meritocracy" which means that "`performance governs.'" Gill liked that concept, and felt that the word "merit" was "a positive word that we could earn ourselves on our merits." When Gill was asked if he named his company after the phrase "merit shop" used by ABC, he said "[i]f I had wanted to define it in that way, I would have called it `Merit Shop Industrial Constructors,' because I'm very familiar with what the term meant at the time, and it meant a certain type ofof work."
Rigby testified that JE Merit first considered using that name in 1981, that the decision to change its name was not targeted against a particular company, and that the decision to change the name of UMC of Louisiana Inc. to JE Merit was made at the highest level of JE Merit's office in California. Rigby said that JE Merit does business under that name in twenty states. According to Rigby, Boutwell and Landry, the purpose of the name change was to consolidate Jacobs Engineering's industrial construction non-union entities under one name to have a nationwide identity within the Jacobs Engineering group. In addition to the goal of having one national name for marketing purposes, Rigby and Boutwell testified that another impetus for the name change was the difficulty in transferring employees from one small company to another as far as payroll and employee benefits were concerned.
After a thorough review of the testimony and evidence, we find that the word "merit" is a descriptive term because it is commonly understood in the construction industry (the market for Merit's services) to describe an employer with no collective bargaining agreement. Thus, use of the word as part of Merit's name describes a quality or characteristic of Merit's servicesthat it is an employer with no collective bargaining agreement who hires employees and sub-contractors based on merit and not on affiliation with a union.
Merit's contention that the word "merit" in this context appears most often in connection with the word "shop," even if assumed correct, does not defeat classification of the word "merit" as descriptive. In the phrase "merit shop," both words are descriptive, with "merit" being the adjective and "shop" the noun; even used alone, the word "merit" retains its descriptive qualities.
As stated earlier, a descriptive term cannot acquire trade name protection unless it has acquired a secondary meaning. In Louisiana, our supreme court has imposed an additional burden on a plaintiff seeking to obtain protection for a descriptive name which has acquired a secondary meaning. In Straus Frank Co. v. Brown, 169 So.2d at 80, our supreme court stated: "In this state it is a prerequisite to injunctive relief that fraud be established on the part of the defendant and the burden of establishing that fraud is upon the plaintiff. The law has always been reluctant to presume fraud."[5] Even assuming that Merit's name had acquired a secondary meaning, Merit did not show fraud on the part of defendants when they changed their name to JE Merit.
Therefore, for the foregoing reasons, we hold that Merit was not entitled to injunctive relief. The trial court's denial of Merit's request for a preliminary injunction is affirmed. Costs of this appeal to be paid by Merit.
AFFIRMED.
NOTES
[1] JE Merit filed a peremptory exception of no cause of action based on Merit's failure to allege fraud and a declinatory exception of improperly cumulated actions, based on Merit's request for both injunctive relief and damages. According to the minute entry for the hearing on the preliminary injunction (dated February 16, 1989), the declinatory exception was overruled and the exception of no cause of action was referred to the merits.

JE Merit also filed a reconventional demand with its answer. In its reconventional demand, JE Merit sought a declaratory judgment that Merit did not have a protectable trade name in the word "merit"; that Merit's registration of the trade name "merit" with the Louisiana Secretary of State was invalid and unenforceable; that JE Merit and UMC of Louisiana, Inc., never infinged on that trade name; and that JE Merit and UMC of Louisiana, Inc. were entitled to continue their business without any further interference with their names by Merit. JE Merit also sought an order to the Louisiana Secretary of State that he cancel Merit's registration of the trade name "merit" in the field of construction and repair pursuant to LSA-R.S. 51:219. The trial court did not rule on the reconventional demand of JE Merit and UMC of Louisiana, Inc.
[2] Merit's original name was Merit Industrial Contractor, Inc. Merit changed its name on February 22, 1982, to Merit Industrial Constructors, Inc.
[3] Merit contends that based on LSA-R.S. 51:222 and LSA-R.S. 51:223 as well as the Louisiana jurisprudence, in order to enjoin a party from using a registered name, Merit must show prior registration and use of the name in the vicinity and confusion due to the second user's use of the name. Yet this is not correct. Registry of a trade name with the state confers only procedural advantages and not substantive rights. Matherne v. Response Instrument Service & Engineering Corp., 533 So.2d 1011, 1017 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1166 (La. 1989); Hodge v. Red Rockets Fireworks Co., 409 So.2d 680, 682 (La.App. 1st Cir.1981). "Registry of a trade name by one party neither confers any greater substantive rights on that party than existed prior to registration, nor divests another party of any substantive rights he may have had with respect to the name." Matherne, 533 So.2d at 1017; Hodge, 409 So.2d at 682. Thus, Merit must still show it has a protectable property right to its name.
[4] LSA-R.S. 51:223 reads as follows:

§ 223. Remedies
Any owner of a mark registered under this Sub-part may proceed by suit to enjoin the manufacture use, display or sale of any counterfeits or imitations thereof and any court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display or sale as may be by the said court deemed just and reasonable, and may require the defendants to pay to such owner all profits derived from and/or all damages suffered by reason of such wrongful manufacture use, display or sale; and such court may also order that any such counterfeits or imitations in the possession or under the control of any defendant in such case, be delivered to an officer of the court, or to the complainant, to be destroyed.
The enumeration of any right or remedy herein shall not affect a registrant's right to prosecute under any penal law of this state.
[5] We note that the federal courts do not require a plaintiff who depends on secondary meaning to acquire trade mark protection for a descriptive term to show fraud or unfair competition on the part of the defendant to obtain injunctive relief. Note, What's in a Name?Louisiana's "Protection" of Tradenames: Elle, Ltd. v. Elle Est, 41 La.L.Rev. 1389 (1981). See also Vision Center v. Opticks, Inc., 596 F.2d 111, 118 (5th Cir.1979). While the requirement of having the plaintiff prove fraud has been criticized, we are not at liberty to disregard it and must follow the latest supreme court case, Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964). Note, 41 La.L.Rev. at 1395-1396.