664 So.2d 1230 (1995)
CHINCHUBA INSTITUTEThe Sound Option and The Parent-Teacher Group of Chinchuba School, Inc.
v.
ST. TAMMANY PARISH SCHOOL BOARD, Bill Brugmann and Terry Bankston.
No. 95 CA 0419.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*1232 Michael E. Holoway, Covington, for PlaintiffsAppellants Chinchuba InstituteThe Sound Option and the ParentTeacher Group of Chinchuba School, Inc.
Harry P. Pastuszek, Jr., Mandeville, for DefendantsAppellees St. Tammany Parish School Board, Bill Brugmann and Terry Bankston.
Before SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.
This is a trade name infringement case in which plaintiffs-appellants, Chinchuba Institute-The Sound Option and the Parent-Teacher Group of Chinchuba School, Inc., (collectively "Chinchuba School") sought to enjoin defendants-appellees, St. Tammany Parish School Board, Bill Brugmann and Terry Bankston (collectively "the School Board") from using a registered trade name. The trial court denied the requests for preliminary and permanent injunctive relief. We reverse.

FACTS
Appellants operate a private school which administers to the needs of deaf and hearing impaired persons and have done so continuously since 1890. Chinchuba School is one of only twenty-four schools of its type in the nation. It attracts students from throughout the United States as well as from various foreign nations. In addition, it operates as a regional school serving students residing in St. Tammany Parish, including the Mandeville area.
In 1934, a fire destroyed the original Mandeville, Louisiana site upon which Chinchuba School had been built and operated. Retaining its name, the school relocated to Marrero, Louisiana.[1]
In January 1994, after obtaining input from parents and teachers, the School Board adopted a resolution naming a newly built public school in Mandeville, "Chinchuba Middle School." Representatives for appellants *1233 contacted the School Board in early March 1994, to protest the use of their registered trade name for the newly erected public school.[2] Despite numerous meetings at which representatives for the Chinchuba School requested their registered trade name not be used and voiced concerns for the likelihood of causing confusion, especially to deaf and hearing impaired persons seeking information on enrollment in appellant school, the School Board named the new public school in Mandeville, "Chinchuba Middle School."
On July 13, 1994, appellants filed a petition to enjoin the School Board from using their registered trade name. The parties agreed to consolidate the actions for preliminary and permanent injunctive relief, and after a hearing, the trial court denied appellants' requests. Appellants appeal, raising the following issues:
(1) Whether Chinchuba School is entitled to enjoin the School Board from using their registered trade name; and
(2) Whether the legislature intended LSA-R.S. 51:224 to include the activities of a public school.

LAW
Addressing the first issue raised by Chinchuba School, we note the applicability of LSA R.S. 51:211-300 (entitled "Trade Marks and Trade Names") to trade names was recently examined in Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 94-2203 (La. 4/10/95); 652 So.2d 1306. In that case, plaintiff, Gulf Coast Bank, conducting business primarily in the Acadiana area, had registered its name with the Secretary of State. Defendant began doing business, primarily in the New Orleans area, under the name of "Gulf Coast Bank & Trust." On a motion for summary judgment, relying on Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964), the trial and the intermediary courts determined plaintiff's inability to prove fraud on the part of defendant was fatal to its request for injunctive relief and dismissed the lawsuit.
The Louisiana Supreme Court took the opportunity in Gulf Coast Bank to revisit the issue of whether fraud is a proper requirement in seeking an injunction for trade name infringement, concluded it was not, and overruled Straus Frank Co. v. Brown. In so doing, the history of the piecemeal amendments to the cryptic statutory scheme entitled "Trade Marks and Trade Names" was reviewed. The Gulf Coast Bank court determined LSA R.S. 51:211-300 accorded substantive statutory protections to trademarks and service marks, and while the statutory scheme allowed trade names to be registered, it did not provide protection for infringement of those trade names. The court concluded the legislature intended to leave the substantive protection of trade names to the jurisprudentially developing law relating to trade names as part of the law of unfair competition. Gulf Coast Bank, 652 So.2d at 1311.
Under the unfair competition jurisprudence relating to trade names, the primary issues in a trade name infringement case are: (1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude others from using; and (2) if so, whether there has been an infringement of that right. In determining whether one has a protectable trade name, actual use of the name (i.e., priority of appropriation) gives rise to a protectable proprietary interest in the name. Additionally, the trade name must be distinctive, either by being inherently distinctive or by having acquired distinctiveness through secondary meaning. In determining the distinctiveness of a trade name, the jurisprudence has generally divided trade names into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Gulf Coast Bank, 652 So.2d at 1309, 1313.
The concept of "secondary meaning" recognizes that words with an ordinary or primary meaning of their own, may, by long use with a particular product, service or business, come to be known by the public as *1234 specifically designating that particular product, service or business, and thereby rise to the level of a fully protected trademark or trade name. Secondary meaning may be proved by either direct evidence such as testimony from individuals, surveys, and proof of actual instances of confusion; or by indirect evidence such as the volume of business done under the name, the length of time the designation has been in use, advertising and promotional efforts, and the conspicuousness of the designation. Gulf Coast Bank, 652 So.2d at 1314.
Once a plaintiff has established it has a protected proprietary right in the name it seeks to exclude others from using, it still must show an infringement upon that right to obtain injunctive relief. Under Straus Frank, plaintiff was required to prove fraud on the part of the defendant. In Gulf Coast Bank, the court determined the fraud requirement imposed in Straus Frank was unduly burdensome, completely swallowed up the secondary meaning doctrine and failed to properly balance the purposes behind the protection of trade names. The court then held where one relies on secondary meaning to establish the distinctiveness of its name, in order to enjoin another's use of a similar name, there need only be proof of a likelihood of confusion. Gulf Coast Bank, 652 So.2d at 1319-1320.

I.
The School Board asserts a public school infringes on the use of a registered trade name only if it is using the name for a commercial purpose. The School Board contends its public school is not in commerce or in competition with private schools in a commercial sense, and its use of the name Chinchuba was not for a commercial purpose.
In Gulf Coast Bank, the supreme court concluded the substantive protection of trade names was not within the "Trade Marks and Trade Names" statutory scheme. However, the determination of whether a particular designation is defined as a "trade name" is legislatively provided in LSA R.S. 51:211(D) which states, "The term `trade name' means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others."
LSA R.S. 51:211(E) defines a "person" within the "Trade Marks and Trade Names" statutory scheme as "any individual, firm, partnership, corporation, association, union, public or private educational institution, or other organization." An "educational institution," as used within this statutory scheme, is further defined as "any institution licensed, approved, or funded by the state to perform educational services." LSA R.S. 51:211(I).
Both Chinchuba School and the public school (which is regulated by the School Board) are "educational institutions" within the definitions of LSA R.S. 51:211. The School Board has cited no authority for its assertion that public schools are exempt from the jurisprudentially developing law relating to trade names as part of the law of unfair competition. Accordingly, we find Chinchuba School is a "person" within the definition of "trade name" and is entitled to seek injunctive relief to preclude a subsequent use by another educational institution of its trade name. In order to prevail, Chinchuba School must establish it has actually used its trade name; the trade name is either inherently distinctive or acquired distinctiveness through secondary meaning; and there is a likelihood of confusion. Gulf Coast Bank, 652 So.2d at 1313, 1320.

II.
Appellants' actual use of the registered trade name "Chinchuba School" was undisputed. The testimony of Virginia LeCompte, current Director of Development and Community Education at appellant school, established the registered trade name "Chinchuba Middle School" is also in actual use by appellants. Recognizing the word "Chinchuba" had been associated with a geographical area, the trier of fact nevertheless found the appellants had established secondary meaning. The sole basis for the denial of the requested injunctive relief was the trial court's reliance on the jurisprudence prior to Gulf Coast Bank which required appellants *1235 to prove fraud on the part of the School Board.
The trial court specifically found the Chinchuba School had established both secondary meaning and the likelihood of confusion. Whether a trade name has acquired secondary meaning and whether there is a likelihood of confusion are questions of fact. Gulf Coast Bank, 652 So.2d at 1314, 1321. An appellate court may not set aside a trial court's findings of fact in the absence of "manifest error" or unless the findings are "clearly wrong." Before an appellate court can set aside a trial court's finding of fact, the appellate court must find from the entire record that there is no reasonable factual basis for the fact finder's conclusion and must determine the record establishes the finding is clearly wrong. The issue to be resolved when reviewing the factual findings is not whether the trier of fact was right or wrong, but whether the conclusion reached was a reasonable one. Stobart v. State of Louisiana, Through Dept. of Trans. and Dev., 617 So.2d 880, 882 (La.1993).
The trial court determined "Chinchuba" was a geographic term associated with an area in St. Tammany Parish in the vicinity of Mandeville. Both of the School Board's witnesses testified to the association. Mr. William Brugmann indicated the area was geographically in proximity to and included the old Chinchuba Deaf Mute Institute site. We find no error in the trial court's finding that the term "Chinchuba" was a geographic term.
A geographic term is classified as a descriptive term and in order to be afforded protection as a trade name must have acquired secondary meaning. Gulf Coast Bank, 652 So.2d at 1313.
The trier of fact found secondary meaning had been established by Chinchuba School through their long recognized work with the hearing impaired. The trial court noted the good reputation Chinchuba School had developed and pointed out the uncontroverted evidence was that the appellant school was the third oldest school in the nation for deaf and hearing impaired persons.
The record is replete with direct evidence of the secondary meaning associated with the term "Chinchuba" and with the appellant school, its philosophy and its good works. Five witnesses testified on behalf of Chinchuba School and expressed their understanding of the term "Chinchuba," relating it to appellant school and its philosophy. Ms. Suzie Grappe's testimony was most notable. Ms. Grappe, a deputy sheriff who is deaf, attended Chinchuba School.[3] She stated:
[N]o matter where you go in the United States, Chinchuba is recognized as being an oral program. And basically, that means an alternative. There are only [a] few such schools like this and no matter where you go, it's a philosophy. It's [an] oral philosophy. And it's very important to us.
Ms. Grappe explained the philosophy of Chinchuba School was different from other educational institutions for hearing impaired and deaf persons because it teaches learning compensation skills to its students. She also demonstrated for the trial court the American Sign Language's specific sign for the word "Chinchuba." The testimony of the other witnesses for the appellants was in conformity to Ms. Grappe's and provides further support of a finding the term Chinchuba has acquired a secondary meaning. Moreover, such testimony tends to support a finding that the term is inherently distinctive.
The testimony of Ms. Virginia LeCompte presents direct evidence of actual instances of confusion. Ms. LeCompte stated she had received numerous calls inquiring about the association between the appellant school and the public school in the Mandeville area.
Also admitted into evidence were seven affidavits wherein each affiant confirmed the general good reputation established by Chinchuba School and the association of the term "Chinchuba" with the appellant school. Three of the affidavits described actual instances *1236 of confusion. Ms. Donna Breaux, Office/Plant Manager of Chinchuba School, attested to having received several inquiries from vendors who wanted to provide goods and services for the "new" school. Ms. Linda LeCompte, a donor to appellant school, expressed her personal confusion upon knowledge of the newly created school in Mandeville. She was confused about whether Chinchuba School was moving to Mandeville. Mr. Craig Massey, the Child's Rights Coordinator for the State of Louisiana, receives inquiries regarding educational rights and special services for hearing impaired children. He attested professionals often refer their clients to Chinchuba. He stated he had received several calls from professionals eliciting information about the "new" Chinchuba School in Mandeville.
In addition, the record contains indirect evidence establishing secondary meaning. Appellants have actually used the term "Chinchuba" in conjunction with their educational institution continuously since Chinchuba School was founded in 1890.
Ms. Virginia LeCompte testified about the promotional efforts of Chinchuba School. She described a brochure advertising specific programs including child development, preschool and the parent/infant program. She stated information was disseminated through several media sources by the use of photographs, flyers, newsletters and informational videos, including tapes which are captioned for the hearing impaired.
In light of both the direct and indirect evidence contained in the record, we find the trial court was not manifestly erroneous in finding appellants established secondary meaning for the geographical term "Chinchuba." Accordingly, we conclude the trade names "Chinchuba School" and "Chinchuba Middle School" have acquired distinctiveness through secondary meaning and, therefore, Chinchuba School has a protected proprietary right in the names.
In order to establish the School Board infringed on Chinchuba School's protected proprietary right and enjoin the subsequent user from using their registered trade names, appellants must prove a likelihood of confusion. The trial court determined the appellants sustained their burden of proving this element of their case and we find no manifest error with this factual finding.
Ms. Suzie Grappe's testimony explained the likelihood of confusion and the particular problems deaf and hearing impaired persons might encounter. Ms. Grappe related the trauma and anxiety experienced by parents when a child has been diagnosed as deaf or hearing impaired. She described a special telephonic device utilized by the appellant school to permit conversations with hearing impaired individuals and explained its importance to the deaf and hearing impaired community. Ms. Grappe believed that a confused parent might inadvertently contact the public school in Mandeville, become frustrated with the mistaken contact and either abandon or delay attempts to locate appellant school. This was especially likely for those parents residing outside the State of Louisiana. Ms. Grappe, relating her personal experience, discussed the importance of an early introduction to the Chinchuba philosophy and how all obstacles and impediments should be eliminated whenever feasible in light of the number of problems already faced by parents and their deaf children.
In addition, we note that the testimony of Ms. Virginia LeCompte, discussed above, and the affidavits admitted into evidence wherein three affiants testified to actual incidents of confusion also support the trial court's factual finding of the likelihood of confusion.

III.
The School Board urges that because Chinchuba School is located in Marrero and the public school is located in Mandeville, there is no likelihood of confusion. We disagree.
In Gulf Coast Bank, the supreme court incorporated the basic rule developed in the federal courts that the protection of a trade name extends not only to areas in which the name has been used but also to areas in which the reputation of the first or senior user has extended even though that may be outside its area of actual operation. The court noted the extent to which one may *1237 protect its trade name outside its geographic area of operation is interconnected with the issue of likelihood of confusion. Gulf Coast Bank, 652 So.2d at 1321-1322. The court further noted that if the name is of a type which requires secondary meaning for protection, only the areas in which the senior user's name has achieved secondary meaning at the time of the junior user's commencement are protected. Gulf Coast Bank, 652 So.2d at 1322 n. 13.
Examining the facts of this case, we conclude appellants have established a likelihood of confusion not only in their area of operation, and nationally, but also within the geographic region known as "Chinchuba" in the vicinity of Mandeville. Having determined appellants have established a proprietary right in the term "Chinchuba" as used in connection with an educational institution, the broader rule announced in Gulf Coast Bank clearly affords protection within their zone of operation.
In addition, the record contains ample evidence supporting application of the narrower rule suggested in Gulf Coast Bank when the senior user's distinctiveness is based on acquired secondary meaning. Both of the School Board's witnesses testified to their cognizance of the appellants' secondary meaning associated with the term "Chinchuba" prior to the adoption of the name for the public school.
Ms. Gayle Sloan, principal of Mandeville Middle School and a lifelong resident of the Mandeville area, testified she personally knew of the existence of Chinchuba School as an educational institution long before the School Board's committee's selection process. She acknowledged the good reputation associated with appellant school and the historical relation between Chinchuba School and the geographic area known as Chinchuba located in the vicinity of Mandeville. In addition, Ms. Sloan admitted the selection committee was aware of the existence of Chinchuba School and that it was still operating as a school in Marrero. She conceded, despite the committee's actual knowledge of the appellants' prior use of the term "Chinchuba" for their educational institution, the committee did not conduct a search with the Secretary of State's office to determine whether the name had been registered.
Mr. William Brugmann, principal of the appellees' public school in Mandeville, also admitted he was actually aware of appellant school's long use of the term "Chinchuba." A resident of Mandeville since 1963, Mr. Brugmann testified he knew of the appellants' prior use of the term "Chinchuba" for their educational institution operating in Marrero. Like Ms. Sloan, he acknowledged the historical association Chinchuba School had with the Mandeville area.
Accordingly, we conclude the appellants have established a likelihood of confusion not only within their area of operation but also in the geographic area known as "Chinchuba" located within the vicinity of Mandeville.

IV.
Because we have determined appellants have a protectable proprietary right in their registered trade names and have sustained their burden of proving an infringement, they are entitled to enjoin the School Board from using those registered trade names.[4]
For the reasons herein expressed, the judgment dismissing appellants' petition for preliminary and permanent injunctive relief is reversed and judgment is hereby rendered prohibiting and enjoining defendants from the use of the name "Chinchuba Middle School" or any similar derivation thereof. *1238 The School Board is assessed with the costs of this appeal in the amount of $1,158.50.
REVERSED AND RENDERED.
NOTES
[1] At one time appellant school was called Chinchuba Deaf Mute Institute. The record does not establish when the name was changed.
[2] On April 6, 1987, appellants registered the trade name "Chinchuba School" with the Secretary of State. Likewise, the trade name "Chinchuba Middle School" was registered on May 26, 1994.
[3] Ms. Grappe founded and directs the Louisiana Hearing Dog Program. She has received many honors and awards, including having been named the 1989 International Deaf Woman of the Year, the 1988-89 Law Enforcement Officer of the Year for both the Kiwanis and the American Legion, and the 1994 Outstanding Handicapped Citizen for the State of Louisiana.
[4] Appellants have assigned error to the trial court's ruling that the legislative intent of LSA R.S. 51:224 does not include the activities of appellee public school in this case. LSA R.S. 51:224 states in relevant part "[n]o person shall use for any commercial purpose any name ... which resembles the official name ... of a[n] ... accredited private educational institution ..." and permits injunctive relief to the aggrieved party. In light of our determination that appellants are entitled to injunctive relief under the jurisprudentially developing law relating to trade names as part of the law of unfair competition, we find it unnecessary to address whether the legislature intended LSA R.S. 51:224 to include the activities of appellee public school and, accordingly, pretermit a discussion of that issue.